IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| JERMAINE STAGGERS<br>1700 Meadow Court<br>Baltimore, MD 21207 | *<br><br>* |
| Plaintiff, | * |
| v. | *     Civil Action No. |
| NORRIS COCHRAN,<br>ACTING SECRETARY OF THE UNITED<br>STATES DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 | *<br><br>*<br><br>*<br><br>* |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT FOR DISCRIMINATION AND RETALIATION**

COMES NOW Plaintiff, Jermaine Staggers, by and through undersigned counsel, and states as follows:

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e) alleging discrimination on the basis of gender in employment and for retaliation.

**JURISDICTION AND VENUE**

2. Jurisdiction of this court is founded pursuant to 28 U.S.C. § 1331in that this is a civil action arising under Title VII.

3. Venue lies in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the employment practices alleged to be unlawful were committed by Defendant and its agents within

the District of Maryland, Mr. Staggers' personnel records are maintained in this jurisdiction and it is a claim against an agency of the United States through its Secretary.

## PARTIES

4. Plaintiff, Jermaine Staggers ("Mr. Staggers"), is an African-American male, a citizen of the United States and a *bona fide* resident of the state of Maryland. At all times relevant herein, Mr. Staggers was an employee of the United States Department of Health and Human Services in the Centers for Medicare & Medicaid Services.

5. The United States Department of Health and Human Services ("Agency" or "HHS") is a duly-authorized and organized agency of the United States of America with its headquarters located in Washington, D.C. The HHS is subject to the prohibitions against discrimination, pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e).

## FACTS COMMON TO ALL COUNTS

6. Since 2010 and at all times relevant to this action, Mr. Staggers was employed as a Health Insurance Specialist, GS -0107-13 in the Division of Issuances, Issuances, Records and Information Systems Group, Office of Strategic Operations and Regulatory Affairs at CMS.

7. At all relevant times, except between March and October 2018, Mr. Staggers' direct line supervisor was Janis Nero, a female.

8. Ms. Nero supervised the following GS-13-level female subordinates (the "Comparators"), who, during the relevant timeframe, were similarly situated to Mr. Staggers in that they were subject to the same employment policies as Mr. Staggers, performed similar job tasks and responsibilities, and, prior to the discriminatory and retaliatory conduct that forms the basis for this action, had similar job performance evaluations and disciplinary history:

  A. Kathleen Singer
  B. Deborah Smith

      C.    Janice Pinn
      D.    Ronda Bonner-Allan.

9. On or about August 25, 2017, Ms. Nero decided to add Mr. Staggers to the Manual Updates Team and sent Mr. Staggers and two others an email announcing her plans.

10. Mr. Staggers responded to Ms. Nero in an August 28, 2017 email and pointed out that he already was carrying a full workload as he was directly responsible for three (3) manuals and was designated as back-up for six others, more than any other of his colleagues. He also pointed out that there were other members of his department, including the Comparators that had lighter workloads that were better equipped to take on the updating tasks that Ms. Nero planned to assign to him.

11. Ms. Nero ignored the legitimate issues that Mr. Staggers had raised, directed Mr. Staggers to report for training on manual updating, and informed him that the assignment was mandatory and that if he refused it, he could be subjected to disciplinary action.

12. Not surprisingly, and as Mr. Staggers correctly recognized, once Mr. Staggers was compelled to handle the additional manual updates, he began to have difficulty completing all of the tasks he had been assigned in an appropriate and timely manner.

13. In addition, Ms. Nero assigned Mr. Staggers work that was not only outside his position description, but was actually supposed to be performed by her, including review of technical proposals.

14. On or about October 17, 2017, following an internal grievance filed by Mr. Staggers on September 22, 2017, Ms. Nero changed Mr. Staggers' position description without telling him or providing him with a copy of his new position description in violation of the Master Labor Agreement, Article 28, ¶¶3A-B.

15. Beginning in March 2018, Mr. Staggers' second line supervisor, Carlos Simon, began acting as Mr. Staggers' first line supervisor due to the issues created by Ms. Nero's mistreatment of Mr. Staggers.

16. On or about March 29, 2018, Mr. Staggers contacted Michael Tutnauer, an Agency EEO Counseling and ADR Coordinator to lodge a complaint regarding his unlawful treatment at the hands of Ms. Nero. The March 29, 2018 complaint constituted protected activity. Accordingly, the Agency became aware of Mr. Staggers' protected activity by no later than March 29, 2018.

17. At various points in April 2018, Mr. Staggers communicated via email and/or telephone with Ms. Nero and/or Mr. Simon regarding his excessive workload, to seek guidance regarding the order of priority of the many assignments he had been given, and to implore them to divide the work fairly among the available Agency employees, including the Comparators.

18. April 6, 2018, Mr. Simon summoned Mr. Staggers to a meeting during which he scolded Mr. Staggers with his voice raised and threatened Mr. Staggers with termination if he was unable to complete the unreasonable amount of work he had been assigned.

19. On April 11, 2018, Mr. Simon, upon information and belief at the request of Ms. Nero, directed Mr. Staggers to provide him with a status report of his work at 8:00 a.m., 10:00 a.m., 12:00 p.m., 2:00 p.m. and 3:00 p.m. (5 times per day) every day until he decided that Mr. Staggers was handling his assignments in an acceptable manner.

20. Mr. Simon's instructions not only caused Mr. Staggers embarrassment and emotional harm, but also compounded the existing problems by forcing him to take time he otherwise could have used to do his work to report to Mr. Simon.

21. None of the Comparators were ever ordered to report to Ms. Nero or Mr. Simon on any regular basis, and certainly not five (5) times per day.

22. Instead of Mr. Simon recognizing that Ms. Nero's assignments to Mr. Staggers ,and his own unique and belittling reporting requirements, made it impossible for Mr. Staggers to timely complete all of the work he had been assigned, Mr. Simon concluded that Mr. Staggers' health, well-being and inability to balance his work and familial responsibilities were preventing him from performing at an acceptable level. So, on April 13, 2018, Mr. Simon issued Mr. Staggers a referral to the Employee Assistance Program.

23. None of the Comparators were ever referred to EAP due to issues with relating to the timely completion of assignments.

24. On or about June 19, 2018, Ms. Nero and Mr. Simon assigned Mr. Staggers a PRM work assignment. At that time, this was the second largest ongoing assignment in the Division of Issuances.

25. At one point during the middle of 2018, Ronda Bonner-Allan, one of the Comparators, approached Mr. Staggers to inquire why he was being singled out from the other members of the Manual Updating Team. She specifically noted that he was not included in team meetings and was assigned his work separately from the rest of the team.

26. Throughout the summer of 2018, Ms. Nero and Mr. Simon continued to assign Mr. Staggers assignments that were well out of proportion to the assignments that the Comparators were expected to complete. Mr. Staggers' inquiries as to why he was being singled out and request that he be given guidance as to the priority of the assignments he had been given were ignored.

27. On August 21, 2018, Mr. Simon, at the direction of Ms. Nero, sent Mr. Staggers an email criticizing him for failing to timely complete three manual updates thereby rendering them inaccurate and ordered him to complete them within three business days. He again demanded that Mr. Staggers update him on his work progress multiple times each day.

28. On August 29, 2018, Ms. Nero issued Mr. Staggers a Written Counseling Memorandum (WCM) as a result of his purported inability to handle the inappropriate workload that he had been assigned. The WCM included a laundry list of criticisms of Mr. Staggers and ordered him to undertake additional work and complete additional tasks in an objectively unreasonable timeframe.

29. Mr. Staggers had been working from home on Mondays and Fridays as part of the Scheduled Flexiplace program since 2014. Through the WCM, Ms. Nero also revoked Mr. Staggers' ability to work Scheduled Flexiplace due to Ms. Nero's claim that Mr. Staggers required close supervision and constant personal contact, thereby altering the terms of Mr. Staggers' employment.

30. None of the Comparators was ever issued a Written Counseling Memorandum by Ms. Nero, and no similarly situated female agency employees under Ms. Nero's supervision ever had their Scheduled Flexiplace privileges revoked by Ms. Nero regardless of their performance.

31. On or about November 8, 2018, Ms. Nero issued Mr. Staggers a Direct Order in which she demanded that he complete seven manual updates by no later than November 15, 2018 (within five business days). Ms. Nero knew that this demand was unreasonable, and that Mr. Staggers would be unable to comply with it at the time she made it.

32. None of the Comparators was ever issued a Direct Order as a result of their failures to complete work assignments by a deadline set by Ms. Nero.

## PLAINTIFF'S PROTECTED ACTIVITIES AND
## SATISFACTION OF CONDITIONS PRECEDENT

33. On March 29, 2018, Mr. Staggers contacted an Equal Employment Opportunity Counselor regarding the discriminatory conduct he had been experiencing at the hands of Ms. Nero.

34. After efforts to resolve the complaint were unsuccessful, the Agency notified Mr. Staggers by letter dated June 26, 2018 of his right to file a formal complaint of discrimination.

35. On July 19, 2018, Mr. Staggers filed a formal complaint of discrimination which was accepted in part by the Agency as communicated in a letter dated August 21, 2018.

36. Mr. Staggers then amended his formal complaint three times: on August 28, 2018, September 20, 2018 and on November 14, 2018. All three amendments were accepted by the Agency.

37. The Agency investigated Mr. Staggers' claims and, under cover of a letter dated May 6, 2019, issued a Report of Investigation and notice of election rights.

38. On May 23, 2019, Mr. Staggers requested a hearing by an EEOC Administrative Judge. Mr. Staggers and the Agency were in the process of conducting discovery when, in Mr. Staggers' view, the Administrative Judge's ruling regarding the timing of discovery, which rejected a reasonable discovery schedule agreed upon by Mr. Staggers and Agency counsel, made it virtually impossible for Mr. Staggers to properly prepare for his hearing.

39. Due to the Administrative Judge's rulings, Mr. Staggers withdrew his request for a hearing on August 31, 2020, an Order of Dismissal was issued on September 1, 2020, and the matter was remanded to the Agency for the issuance of a Final Decision.

40. The Agency issued a Final Decision dated October 29, 2020 which was received by Mr. Staggers' counsel of record on Monday, November 2, 2020.

## COUNT I

**Violation of Title VII of the Civil Rights Act of 1964 – Gender Discrimination**

41. Mr. Staggers repeats and realleges Paragraphs 1-41 hereof as if fully set forth herein.

42. Mr. Staggers, a male employee of the Agency, is a member of a protected class.

43. During the relevant time period, Mr. Staggers was subject to multiple adverse employment actions including (1) repeatedly being given excessive work assignments, many of which did not come within the scope of the duties of his position and which made it impossible for him to perform the basic functions and duties of his position; (2) Being compelled to stop working during his workday to report to his superiors up to five times a day which prevented him from performing the basic functions and duties of his position; (3) Being denied the right to use Scheduled Flexiplace, a right he was entitled to under the Master Labor Agreement that was operative at the time; (4) Being berated and threatened by his superiors when he was unable to handle the impossible workload they had imposed on him; (5) Being excluded from meetings of the Manual Updating Team and being singled out with regard to how work was assigned to him as a purported member of that team; (6) Being issued a baseless Written Counseling Memorandum which remains in his personnel records and which has and will continue to affect his ability to advance his career; (7) Being issued a baseless Direct Order which has and will continue to affect his ability to advance his career; and (8) Generally being subjected to discipline and treatment that was inconsistent with the terms of the operative Master Labor Agreement because of his gender.

44. The Comparators identified herein were treated more favorably than Mr. Staggers both with regard to their not being assigned an unreasonable workload or being directed to

perform work that did not come within their job description, with regard to the fact that discipline was not imposed on them by Ms. Nero and/or Mr. Simon regardless of and despite their performance issues and with regard to the fact that the conditions of their employment were not altered regardless of and despite their performance issues.

45. Mr. Staggers suffered damages as a result of the Agency's discriminatory actions including emotional distress, lost wages and benefits, and the costs of bringing this action.

WHEREFORE, Plaintiff prays this Court:

a. To award him, under Title VII of the Civil Rights Act, all the back pay and fringe benefits he has lost as a result of Defendant's unlawful discrimination against him;

b. To award him, under Title VII of the Civil Rights Act, compensatory damages in an amount to be determined at trial;

c. To expunge from his personnel file and any other file maintained by the Agency the April 13, 2018 referral to the Employee Assistance Program, the August 29, 2018 Written Counseling Memorandum, and the November 8, 2018 Direct Order;

d. To award him reasonable attorney's fees and costs of this action; and

e. To award him such other and further relief as this Court deems just and proper.

## COUNT II

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

46. Mr. Staggers repeats and realleges Paragraphs 1-45 hereof as if fully set forth herein.

47. Mr. Staggers engaged in protected activity when, on March 29, 2018, he contacted Michael Tutnauer, an Agency EEO Counseling and ADR Coordinator to lodge a complaint regarding his unlawful treatment at the hands of Ms. Nero because he is male.

48. Mere days later, and continuing in the weeks and months that followed his protected activity, the Agency, through Ms. Nero and/or Mr. Simon, berated and humiliated Mr. Staggers in a face-to-face meeting, compelled Mr. Staggers to report to Mr. Simon five times daily, referred Mr. Staggers to the Employee Assistance Program, issued Mr. Staggers a Written Counseling Memorandum in which, among other things, she revoked his Scheduled Flexiplace, and a Direct Order, and continued to assign Mr. Staggers work that they knew he did not have the capacity to handle and which did not come within the scope of the duties of his position.

49. Mr. Staggers was subjected to all of the above unlawful conduct because he engaged in protected activity when he complained of gender discrimination.

50. Mr. Staggers suffered damages as a result of the Agency's retaliatory actions including emotional distress, lost wages and benefits, and the costs of bringing this action.

WHEREFORE, Plaintiff prays this Court:

a. To award him, under Title VII of the Civil Rights Act, all the back pay and fringe benefits he has lost as a result of Defendant's unlawful retaliatory conduct against him;

b. To award him, under Title VII of the Civil Rights Act, compensatory damages in an amount to be determined at trial;

c. To expunge from his personnel file and any other file maintained by the Agency the April 13, 2018 referral to the Employee Assistance Program, the August 29, 2018 Written Counseling Memorandum, and the November 8, 2018 Direct Order;

d. To award him reasonable attorney's fees and costs of this action; and

e. To award him such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues.

Dated: January 27, 2021

Respectfully submitted,

_____
Joseph B. Wolf, Esq. (Fed. Bar No. 27882)
joseph@luchanskylaw.com
Bruce M. Luchansky (Fed. Bar No. 08439)
lucky@luchanskylaw.com
LUCHANSKY LAW
606 Bosley Ave., Suite 3B
Towson, Maryland 21204
Telephone: (410) 522-1020
Facsimile: (410) 522-1021
*Attorneys for Plaintiff*