**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JERMAINE STAGGERS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-00231-ELH |
| | ) | |
| NORRIS COCHRAN, ACTING | ) | |
| SECRETARY, U.S. DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant, Norris Cochran, Acting Secretary of the U.S. Department of Health and Human Services (the "HHS" or "Agency"), by and through Jonathan F. Lenzner, Acting United States Attorney for the District of Maryland, and Kimberly S. Phillips, Assistant United States Attorney for said District, respectfully submits this Memorandum of Law in Support of his Motion to Dismiss or, in the Alternative, for Summary Judgment, and in support thereof, states as follows:

**INTRODUCTION**

This is a federal sector employment action claiming sex-based employment discrimination and retaliation brought by Plaintiff, Jermaine Staggers, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). Plaintiff, a GS-13 Health Insurance Specialist, claims that he has been discriminated and retaliated against because he is a male and filed an Equal Employment Opportunity ("EEO") complaint. In essence, Plaintiff alleges he was unfairly assigned excessive work assignments, subjected to restrictive work conditions, and given formal counseling and orders. In truth, Plaintiff was assigned less work than his alleged comparators and forced his supervisors to provide counseling and work orders due to his brazen refusal to perform the reasonable work that was assigned. Plaintiff's supervisors diligently considered

Plaintiff's workload when assigning work and determined that as a GS-13, with a light workload compared to his colleagues, he was capable of performing the work.

Plaintiff's Complaint fails as a matter of law for several reasons. As a preliminary matter, Plaintiff's pleadings fail to allege plausible claims for relief. Likewise, based on the robust record below, Plaintiff cannot establish a *prima facie* case of discrimination under Title VII because he has not suffered any adverse action and he cannot overcome the legitimate, non-discriminatory reasons for the Agency's actions. With regard to his claim of retaliation, Plaintiff cannot show he was subjected to any actions that a reasonable employee would find materially adverse and he cannot demonstrate a causal link between his protected activity and any purported adverse action. Plaintiff's Complaint should be dismissed or, in the alternative, summary judgment should be granted in favor of the Agency.

## I.    Statement of Facts

### A.    Background.

Plaintiff is a GS-13 Health Insurance Specialist in the Division of Issuances ("DI"), Issuances, Records and Information Systems Group ("IRISG"), Office of Strategic Operations and Regulatory Affairs ("OSORA"), Centers for Medicare and Medicaid Services ("CMS"), for the Agency in Baltimore, Maryland. (Report of Investigation ("ROI") Exhibit ("Ex.") 7.4.2 at 1, attached hereto as **Exhibit 1**.) Plaintiff's duties included utilization of automated systems to perform daily activities for work related to updating Medicare manuals, collaboration and coordination with internal and external customers to ensure the accuracy and effectiveness of CMS policy instructions, maintenance of official policy instructions for the Medicare and Medicaid Program, and the development and implementation of projects that make a contribution to the improvement of issuances

outcomes. (ROI Ex. 7.4.5, attached hereto as **Exhibit 2**.) Plaintiff has worked for the

Agency since 2010. (ROI Ex. 7.1 at 1, attached hereto as **Exhibit 3**.)

At all times relevant to this matter, except between March and October 2018,

Plaintiff's first level supervisor was Janis Nero. (Compl. at ¶ 7.) Between March and

October 2018, Plaintiff's first level supervisor was Carlos Simon. (Ex. 3 at 1.) Plaintiff's

second level supervisor at all times relevant to this matter was Carlos Simon. (*Id.*) Plaintiff

identifies his sex as male. (*Id.* at 2.)

### B.    Work Assignments.

IRSIG has a team that is responsible for updating weekly manuals associated with

the Medicare program based on change requests ("CRs") that require manual updates each

week. (ROI Ex. 7.2.1 at 3, attached hereto as **Exhibit 4**.) The task of updating weekly

manuals based on CRs is included as an essential element in Plaintiff's Performance

Management Appraisal Plan. (Ex. 2.) In September 2017, one of the team members

responsible for updating the weekly manuals, Deborah Smith, retired. (Ex. 4 at 3.) Janis

Nero determined that in order to meet work requirements another employee had to be

added to the manual updating team.  (*Id.*) After assessing workload and assignments, Janis

Nero determined Plaintiff's workload was lighter than other employees and he was selected

to handle the manual updates. (*Id.*)

On August 25, 2017, Janis Nero informed Plaintiff he would be added to the

manual updating team. (*Id.*) Later that day, Janis Nero sent an email announcing Plaintiff's

assignment to the team and informing him he will be trained by Deborah Smith before her

retirement and another team member, Janice Pinn. (Aug. 25, 2017 email from J. Nero,

attached hereto as **Exhibit 5**.) In response, Plaintiff stated, "Thank you but no thank you"

and averred he had "enough work." (*Id.* at 248.) From August 2017 to September 2017,

Plaintiff trained with Deborah Smith regarding the manual updates. (Ex. 4 at 4.) Beginning in February 2018, Janis Nero began assigning Plaintiff to complete manual updates. (*Id*.) From February to November 2018, Plaintiff either refused to complete several manual updates or did not complete them correctly. (*Id*. at 202.) In November 2018, Janis Nero stopped assigning manual updates to Plaintiff because of his refusal to do the tasks. (*Id*.)

### C.    Reporting Requirements.

From February to November 2018, during the time period Plaintiff was assigned to complete the manual updates, he continuously either waited until the end of the day to begin work on the assignments or did not complete them all. (ROI Ex. 7.2.2 at 7, attached hereto as **Exhibit 6**.) Despite Janis Nero's and Carlos Simon's attempts to assist Plaintiff with completing his assignments, he continued to fail to do so. (*Id*.) Manual updates are a deadline driven, time sensitive work assignment, so timely completion was paramount. (*Id*.) On April 11, 2018, in response to Plaintiff's failure to meet deadlines, Carlos Simon requested Plaintiff write a short email to him every two hours throughout the workday regarding Plaintiff's progress on his assignments going forward. (*Id*. at 8.) The purpose of these reports was to assess the status of Plaintiff's work and allow Carlos Simon to timely intervene with training or assistance if Plaintiff was behind on assignments. (*Id*.)

### D.    Referral to Employee Assistance Program.

On April 13, 2018, Carlos Simon referred Plaintiff to the Employee Assistance Program ("EAP"). (Ex. 6 at 10-12.) EAP is a voluntary work-based program that provides short-term counseling, referrals, and follow-up services to employees who are having personal and/or work-related problems. (*What is an Employee Assistance Program?*, Office of Personnel Mgmt., https://www.opm.gov/faqs/QA.aspx?fid=4313c618-a96e-4c8e-b078-1f76912a10d9&pid=2c2b1e5b-6ff1-4940-b478-34039a1e1174 (last visited March

29, 2021).) Carlos Simon felt Plaintiff's behavior and work performance had been deteriorating since assigning him manual updates. (Ex. 6 at 10-12.) In response, Carlos Simon referred Plaintiff to EAP to make him aware of resources available if Plaintiff was interested. (*Id*.) Plaintiff was not required to contact EAP, nor did the action result in any discipline. (*Id*.)

### E.    Written Counseling.

On August 29, 2018, Janis Nero issued Plaintiff a Written Counseling Memorandum as a result of the inappropriate handling of the manual updating assignments and failure to meet established deadlines. (ROI Ex. 7.4.8, attached hereto as **Exhibit 7**.) The counseling memorandum discussed audit findings that Plaintiff had failed to complete several manual updates that had been assigned to him over the past year. (*Id*.) Further, the memorandum stated Plaintiff's inappropriate handling of CRs and failure to meet deadlines resulted in several assignments needing to be redistributed to Plaintiff's colleagues for completion. (*Id*.)

The memorandum stated Plaintiff had completed manual updating tasks in the past, which indicated he was aware and capable of how to perform the assignment successfully. (*Id*.) The memorandum directed Plaintiff to complete four outstanding CRs within one week. (*Id*.) Finally, the memorandum removed Plaintiff's eligibility to participate in Scheduled Flexiplace ("SFP") pursuant to the Agency's Collective Bargaining Agreement ("CBA"). (*Id*.) Janis Nero indicated that because Plaintiff required close supervision and face to face contact with management his eligibility for SFP would be canceled on September 10, 2018. (*Id*.)

### F.    Direct Order.

On November 8, 2018, Janis Nero issued Plaintiff a Written Direct Order to

complete manual updates for seven overdue CRs by November 15, 2018. (ROI Ex. 7.4.9, attached hereto as **Exhibit 8**.) Janis Nero emphasized, as she had in the counseling memorandum, that Plaintiff had completed multiple manual updates since September 2017 and had therefore demonstrated the ability to perform the task. (*Id*.) The order was an attempt to "present the seriousness of [Plaintiff's] non-compliance" with regard to his assigned tasks. (Ex. 4 at 18-19.) However, Plaintiff did not complete the ordered CRs correctly or in some cases at all. (*Id.*)

## II.     Administrative Procedural History.

On July 19, 2018, Plaintiff filed a formal complaint of discrimination. (ROI Ex. 1.1, attached hereto as **Exhibit 9**.) On September 1, 2020, an Order of Dismissal was issued and the case was remanded to the Agency for issuance of a Final Agency Decision ("FAD") in accordance with 29 C.F.R § 1614.109(b). (FAD at 2, attached hereto as **Exhibit 10**.) On October 29, 2020, the Agency timely issued its FAD finding that the Agency did not discriminate against Plaintiff based on sex or retaliation. (Ex. 10 at 1.) The Agency found Plaintiff was not able to establish a *prima facie* case for Claims 1 through 4, 6, and 8. (*Id*. at 36.) For Claim 7 the Agency found management articulated legitimate non-discriminatory reasons for the actions Plaintiff alleges were discriminatory and retaliatory and Plaintiff was unable to demonstrate these reasons were a pretext for discrimination. (*Id*. at 8-33.)

### STANDARDS OF REVIEW

## I.     <u>Motion to Dismiss for Failure to State a Claim.</u>

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "[f]actual

allegations must be enough to raise a right to relief above the speculative level," thereby

"nudg[ing] their claims across the line from conceivable to plausible." *Aziz v. Alcolac, Inc.*,

658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

570 (2007)) (correction in original). Although courts must generally accept as true the

allegations of a complaint, "the tenet that a court must accept as true all of the allegations

contained in the complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). In short:

> [D]etermining whether a complaint states on its face a
> plausible claim for relief and therefore can survive a Rule
> 12(b)(6) motion will 'be a context-specific task that requires
> the reviewing court to draw on its judicial experience and
> common sense. But where the well-pleaded facts do not permit
> the court to infer more than the mere possibility of
> misconduct, the complaint has alleged – but it has not show[n]
> – that the pleader is entitled to relief . . . .

*Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)

(internal quotation marks omitted) (correction in original).

## II.     <u>Motion for Summary Judgment.</u>

"Under [Federal Rule of Civil Procedure] 12(d) a Court may convert a motion to

dismiss to one for summary judgment and consider matters outside the pleadings, but the

parties must 'be given a reasonable opportunity to present all the material that is pertinent

to the motion.'" *See U.S. Equal Emp't Opportunity Comm'n v. Phase 2 Invs. Inc.*, 310 F.

Supp. 3d 550, 560 (D. Md. 2018) (Bredar, J.) (citing Fed. R. Civ. P. 12(d)). When,

however, "the movant expressly captions its motion 'in the alternative' as one for summary

judgment, and submits matters outside the pleadings for the court's consideration, the

parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court

'does not have an obligation to notify parties of the obvious.'" *Id.*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(a). The mere existence of some alleged factual dispute in the case will not defeat an otherwise properly supported summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment is warranted if there is no genuine dispute of material fact and, as a matter of law, the moving party is entitled to a judgment. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1984). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if it has the potential to affect the outcome of the case under the applicable legal standard. *Anderson*, 477 U.S. at 248.

The moving party's burden of proving that there are no genuine facts in dispute may be met by consideration of affidavits, exhibits, depositions, and other discovery materials. Fed. R. Civ. P. 56; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). However, the moving party will be granted summary judgment if, with or without these accompanying materials, it demonstrates that summary judgment is appropriate. *Catrett*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1) (summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'"). Once the moving party presents a properly supported motion for summary judgment, it is the non-moving party's burden to set forth specific facts, through affidavits or other evidence, that there is a genuine issue for trial. Fed. R. Civ. P. 56. This burden is "particularly strong when the non-moving party [also] bears the burden of proof."

8

*Caussade v. Brown*, 924 F. Supp. 693, 696 (D. Md. 1996) (citations omitted) (correction in original). Furthermore, the non-moving party "cannot create a genuine issue through mere speculation or the building of one inference upon another." *Id*. at 696-97 (quoting *Beale v. Hardy*, 769 F.2d 2213, 2214 (4th Cir. 1985)).

In the employment discrimination context, "a subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *Moore v. Reese*, 817 F. Supp. 1290, 1295 (D. Md. 1993) (citations omitted). Summary judgment will be appropriate when the plaintiff fails to present a *prima facie* case, or when the plaintiff fails to establish a genuine issue of material fact in connection with the employer's legitimate non-discriminatory reason for its actions. *See Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1318 (4th Cir. 1993).

## ARGUMENT

**I.      Plaintiff Has Failed to Allege, Nor Can He Show, that He was Unlawfully Discriminated Against under Title VII.**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Complaints brought pursuant to Title VII place the initial burden of establishing a *prima facie* case of discrimination on the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, a plaintiff must demonstrate by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was qualified for her job and performed it satisfactorily; (3) he suffered an adverse employment action; and (4) employees outside of his protected class were treated more favorably under similar circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Bryant v. Bell*

9

*Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002); *Alvarado v. Bd. of Trs.*, 928 F.2d 118, 121 (4th Cir. 1991); *Lucas v. Cheney*, 821 F. Supp. 374, 375 (D. Md. 1992).

If a plaintiff establishes a *prima facie* case, a presumption of discrimination arises which the agency may rebut by articulating a legitimate, non-discriminatory reason for its action. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 802. The agency is not required to prove the existence of a non-discriminatory reason to rebut the plaintiff's inference. Instead, the agency's burden is merely one of production or articulation. *Burdine*, 450 U.S. at 255-56. If the agency meets this burden, the presumption raised by the plaintiff's *prima facie* case is rebutted and the burden of production shifts back to the plaintiff. *Id*. at 255. The plaintiff must then prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant [agency] were not its true reasons, but were pretext for discrimination." *Id.* at 253; *McDonnell Douglas*, 411 U.S. at 804; *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989). To establish pretext, the plaintiff must show not only that the agency's proffered reason was false, but also that discrimination was the real reason for the agency's action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

In sum, the "ultimate question is whether the [agency] intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's reason . . . is correct." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) (citation omitted); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 324 (D. Md. 2003). Thus, at all times, the plaintiff bears the ultimate burden of demonstrating that the agency intentionally discriminated against him. *Burdine*, 450 U.S. at 253.

A.      **Plaintiff Has Not Suffered Any Adverse Employment Action.**

Plaintiff fails to set forth a *prima facie* case because he cannot show he suffered

from an "adverse employment action" – i.e., an act that altered the terms, conditions, or

benefits of his employment. *Rock v. McHugh*, 819 F. Supp. 2d 456, 470 (D. Md. 2011).

"An absolute precondition to [any discrimination] suit [is] that some adverse employment

action [has] occurred." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).

1.      *Work Assignments and Interactions with Supervisors.*

Plaintiff contends he was subjected to multiple adverse actions including "excessive

work assignments," being "berated and threatened" by his supervisors, reporting

requirements, and being excluded from meetings. (Compl. ¶ 43.)

First, Plaintiff was not assigned excessive work and the work he was assigned was

clearly within his Position Description and Performance Management Appraisal Plan.

Plaintiff, in fact, had a lighter workload than his colleagues and as a GS-13 was perfectly

capable of taking on additional manual updating assignments. (Ex. 4 at 2-3.) Therefore,

Plaintiff cannot demonstrate that he suffered from an adverse employment action. Even

assuming, *arguendo*, Plaintiff's workload was increased with additional duties and job

assignments (even with duties outside his job description), unless accompanied by a

change in the terms or conditions of his employment, this does not constitute an adverse

employment action for purposes of establishing a *prima facie* case of discrimination under

Title VII. *See Thorn v. Sebelius*, 766 F. Supp. 2d 585, 599 (D. Md. 2011), *aff'd*, 465 F.

App'x 274 (4th Cir. 2012) (reassignment of duties outside job description were not an

adverse employment action without some detrimental effect); *see also McKenzie-El v. Am.

Sugar Refinery, Inc.*, No. CV RDB-20-0917, 2020 WL 7489021, at *6 (D. Md. Dec. 21,

2020) (citing *Johnson v. Aluminum Co. of America*, 397 F. Supp. 2d 688, 697 (M.D.N.C.

2005), *aff'd*, 205 Fed. App'x 152 (4th Cir. 2006) (plaintiff alleged he was given extra work but did not explain how the extra work altered the "terms, conditions or benefits" of his employment)).

Next, the instances Plaintiff describes as threatening and being berated were in fact efforts to counsel and provide constructive criticism regarding his inability to complete his work assignments. (Ex. 3 at 8.) To qualify as an adverse action there must be a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir.2007). Even if the counseling efforts Plaintiff describes qualified as threats, they would only be considered adverse actions if coupled with a real, rather than speculative employment injury, which did not occur here. *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003).

Similarly, the requirement that Plaintiff report his work status up to five times per day does not rise to the level of an adverse employment action. While Plaintiff may have considered the requirements an annoyance, his supervisors felt it necessary he report his status throughout the day so they could effectively monitor his progress on assignments and step-in to assist if necessary. (Ex. 6 at 227-28.) However, increased scrutiny over one's work does not amount to an adverse employment action for purposes of a discrimination claim under Title VII. *Lambert v. Washington Suburban Sanitary Com'n*, 93 F. Supp. 2d 639, 643 (D. Md. 2000); *Chappell v. School Bd.*, 12 F. Supp. 2d 509, 515-16 (E.D. Va. 1998) ("full time surveillance" of plaintiff's activities did not constitute adverse employment action).

Finally, Plaintiff has not actually identified any meetings from which he was excluded and any tangible adverse employment action as a result thereof. (*See* Ex. 3.) Even

if Plaintiff had been excluded from meetings – which Defendant does not concede – this action does not rise to the level of an adverse employment action. *See Alexander v. Marriott Int'l Inc.*, No. RWT 09-cv-4202, 2011 WL 1231029, at \*9 (D. Md. Mar. 29, 2011) (holding that "[m]ere exclusion from meetings—absent any tangible, corresponding injury" does not qualify as an adverse employment action even under the lower bar applied to employment actions alleged in retaliation claims).[1]

> 2.   *Written Counseling Memorandum, Referral to EAP, and Direct Order.*

Plaintiff contends he was subjected to further adverse employment actions in the form of an August 29, 2018, Written Counseling Memorandum, a referral to the EAP, and a Written Direct Order. (Compl. ¶ 43.) When a letter of counseling does not actually implement any discipline, but merely cautions that discipline may follow if performance does not improve, it does not constitute an adverse action. *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012). Here, none of the actions at issue resulted in discipline to Plaintiff and were a means to provide constructive criticism and clarify performance expectations. Specifically, the Written Counseling Memorandum outlined the expectations regarding Plaintiff's completion of manual updates and provided constructive criticism along with the resources available to him should he have questions or need assistance. (Ex. 7.) No discipline was levied or threatened in the memorandum. (*Id*.) Accordingly, the Written Counseling Memorandum does not rise to the level of an adverse action.

---

[1] The standard applied to determine whether an alleged adverse employment action rises to an actionable level for purposes of a retaliation claim "is less 'strenuous' than the standard in a discrimination claim."  *See Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013) (internal citation omitted).

Similarly, the Written Direct Order issued on November 8, 2018, does not qualify as an adverse action. Like the counseling memorandum, the Direct Order merely provided affirmative instruction regarding Plaintiff's performance expectations and clarified the assignments he was to complete. (Ex. 8 at 1.) Further, the Direct Order did not impose any discipline, but rather put Plaintiff on notice that "[f]ailure to follow th[e] direct order may result in disciplinary action." (*Id.*) Thus, the Direct Order does not constitute an adverse action.

For the same reasons, Carlos Simon's referral of Plaintiff to the EAP does not constitute an adverse employment action. The referral was out of Carlos Simon's concern for Plaintiff's health and well-being regarding balancing his work responsibilities given his difficulties completing his assignments. (*See* Ex. 6 at 10-11.) The referral did not require any action by Plaintiff or impose discipline, but rather simply made him aware of the resources available to him. (*Id.*) Therefore, the EAP referral does not constitute an adverse employment action. *Rock*, 819 F. Supp. 2d at 470.

### 3.    *Flexiplace Eligibility.*

Plaintiff contends he was subjected to an adverse action when he was removed from Scheduled Flexiplace eligibility. A rescission of Alternative Work Schedule or telework privileges does not rise to the level of an adverse employment action. *Vedula v. Azar*, No. CV TDC-18-0386, 2020 WL 5500279, at *9 (D. Md. Sept. 11, 2020). Accordingly, Plaintiff's removal from eligibility for the Scheduled Flexiplace Program was not an adverse action.

### B.    Plaintiff Has Failed to Establish Circumstances Giving Rise to An Inference of Unlawful Discrimination.

Plaintiff has likewise failed to show that he was discriminated against under circumstances that give rise to an inference of discrimination, the final prong of a *prima*

*facie* case for sex discrimination. Plaintiff does nothing to link the actions taken by the Agency to his sex. Plaintiff's "own naked opinion, without more, is not enough to establish a *prima facie* case . . . ." *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988). More specifically, Plaintiff has not – because he cannot – identified any valid comparators treated more favorably than him. Moreover, even if Plaintiff had alleged circumstances giving rise to an inference of unlawful discrimination, Plaintiff has not demonstrated that the Agency was doing anything beyond properly assigning necessary work and administering necessary supervisory discretion. For these reasons, Plaintiff's discrimination claim should be denied.

Plaintiff identifies four alleged comparators he claims were treated more favorably. (Compl. ¶ 8.) Two of these comparators were not employed with the Agency during the timeframe relevant to Plaintiff's claims. Deborah Smith retired in September 2017, and it was her departure from the Agency that prompted Plaintiff's assignment to the manual updates team. (Ex. 4 at 3.) Kathleen Singer passed away prior to the relevant timeframe. (*See* SF-50, attached hereto as **Exhibit 11**.)

Plaintiff also identifies Ronda Bonner-Allen and Janice Pinn as similarly situated and from outside his protected classes. "Therefore, the validity of [his] prima facie case depends upon whether [those] comparator[s] are indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (internal citations omitted). To prove discrimination through comparative treatment of other employees, Plaintiff is required to show that he is "similar in all relevant respects to [his] comparator." *Haywood*, 387 F. App'x at 359 (emphasis added) (citing *Mitchell v. Toldeo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *see also Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 (D. Md. 2013), *aff'd*, No. 13-1777, 2014 WL 2809027 (4th Cir. June 23, 2014)).

15

Ronda Bonner-Allen is not a similarly situated comparator in all relevant aspects because she is a GS-12, while Plaintiff is a GS-13. (Ex. 4 at 5.) Similarly, Janice Pinn is not similarly situated because she was the manual update team leader and as such oversaw, reviewed, and provided training on the CRs. (*Id*. at 7.)

Further, a plaintiff cannot succeed if he fails to identify a single employee outside his protected class who was treated more favorably than he was. *Terry v. Perdue*, No. JKB-18-31, 2018 WL 4494883, at *9 (D. Md. Sept. 19, 2018). A passing reference to disparate treatment unsupported by any factual allegations will not suffice to establish this prong of plaintiff's *prima facie* case. *Id.* Under *Bell Atlantic Corp. v. Twombly*, such conclusory allegations are insufficient to state a claim for relief. *Terry*, 2018 WL 4494883, at *9 (citing *Twombly*, 550 U.S. at 555). Here, Plaintiff can adduce no evidence that similarly situated employees outside his protected class were treated more favorably. Plaintiff baldly asserts, "Ms. Nero issues [the comparators] less work." (Ex. 3 at 6.) Plaintiff offers no information to indicate why he believes the alleged comparators are assigned less work, beyond mere speculation. (*Id*.) In fact, Plaintiff had the lightest workload among the comparators he named, which is why he was assigned additional CRs. (Ex. 4 at 3.)

Even if Plaintiff could demonstrate Ronda Bonner-Allen was similarly situated, she in fact was responsible for more CRs (32 versus 30) during the relevant time period as compared to Plaintiff.  (*See* Administrator's Ready-For Release Report, attached hereto as **Exhibit 12**) (indicating which employee was responsible for each CR.) Plaintiffs fails to identify any other employees – similarly situated or otherwise – who were treated more favorably than he was. Thus, Plaintiff has failed to present a *prima facie* case of discrimination.

II.     **Plaintiff Cannot Establish a Claim of Retaliation.**

Because Plaintiff has presented no direct evidence of retaliation, his claim is analyzed under the burden shifting framework established in *McDonnell Douglas* for Title VII retaliation claims. *Staley v. Gruenberg*, 575 F. App'x 153, 155 (4th Cir. 2014) (internal citations omitted). To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in a protected activity; (2) his employer took an employment action against him that a reasonable employee would have found materially adverse; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Burlington N. & Santa Fe Ry. Co., v. White*, 548 U.S. 53, 67-70 (2006); *Moret v. Geren*, 494 F. Supp. 2d 329, 343 (D. Md. 2007). Here, Plaintiff cannot demonstrate the second or third required elements of a *prima facie* case.

A.     **The Alleged Retaliatory Acts Are Not Employment Actions that a Reasonable Employee Would Find Materially Adverse.**

Plaintiff has failed to provide evidence demonstrating that the instances of alleged retaliatory conduct, even if true, had materially adverse effects on him. "The antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington*, 548 U.S. at 67. Although a plaintiff need not establish an "ultimate employment decision" to present a *prima facie* case of retaliation, *James*, 368 F.3d at 375-76, he must show that the employer's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57, 67-68 (describing this determination as an objective standard from the viewpoint of a reasonable employee). The Supreme Court expressly requires "*material* adversity because we believe it is important to separate significant from trivial harms." *White*, 548 U.S. at 68 (emphasis in original) (quotation and citations omitted); *see also Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006)

17

("[T]his is still a heavy burden for the plaintiff: the alleged adverse action must be *material*.") (emphasis in original).

Plaintiff alleges that in response to and because of his protected activity, he was berated and humiliated by his supervisors, required to report his work status up to five times daily, referred to the EAP, issued a Written Counseling Memorandum, had his scheduled Flexiplace revoked, issued a Direct Order, and was assigned excessive work. (Compl. ¶ 48.) However, none of Plaintiff's claims qualify as materially adverse even under the "lower bar" applicable to Title VII retaliation claims.

First, Plaintiff offers no evidence nor provides any instances in which he was ever "berated" or "humiliated" by his supervisors. Even if Plaintiff could demonstrate the alleged incidents occurred, yelling at and criticizing an employee is not a materially adverse employment action. *Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011). Likewise, the requirement Plaintiff report on his work status up to five times per day is also not materially adverse as, while Plaintiff may have found it excessive, it was at most a trivial annoyance. *Id*.

Next, the referral to the EAP, Written Counseling Memorandum, and Direct Order were all not materially adverse employment actions. All of these actions were efforts to provide counseling, access to resources, and clarifications of expectations to allow Plaintiff to perform his job duties. None of these actions resulted in disciplinary action, nor had any tangible effect on Plaintiff's employment. (Ex. 7 at 1; Ex. 8 at 312; Ex. 6 at 10-11.) As such none of these actions qualify as materially adverse. *See Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (holding letter of counseling not materially adverse).

Finally, Plaintiff's removal from the Scheduled Flexiplace program does not constitute a materially adverse action. *See Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (holding that an employer's removal of the plaintiff from an alternate work schedule arrangement was not a materially adverse action); *see also Dailey v. Lew*, No. CV GLR-15-2527, 2016 WL 1558150, at *6 (D. Md. Apr. 18, 2016), *aff'd*, 670 F. App'x 142 (4th Cir. 2016) (suspension and denial of plaintiff's telework did not constitute materially adverse employment actions.) Therefore, none of Plaintiff's proffered employer actions rise to the level that a reasonable employee would find materially adverse.

### B.    Plaintiff Cannot Establish the Causal Link Between His Protected Activity and The Alleged Adverse Action.

Plaintiff also cannot establish that a causal connection exists between his protected activity and any purported adverse employment action. Plaintiff retains the "ultimate burden of persuading the trier of fact," that his "engagement in the protected activities was a 'but for' cause of" the retaliation he alleges. *Staley*, 575 F. App'x at 155 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). Here, Plaintiff has not, and cannot, make this showing.

Plaintiff alleges that he engaged in protected activity by filing an EEO complaint on or about March 29, 2018. (Compl. ¶ 47.) Plaintiff alleges following the filing of the complaint he was berated and humiliated by his supervisors, required to report his work status up to five times daily, referred to the EAP, issued a Written Counseling Memorandum, had his scheduled Flexiplace revoked, issued a Direct Order, and was assigned excessive work. (Compl. ¶ 48.) Plaintiff provides no basis for any alleged causal connection beyond his own say-so. Instead, Plaintiff asserts: 1) Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his participation and opposition to the unlawful conduct, *id*. at ¶ 49; 2) Defendant knew of Plaintiff's

engagement in protected activity prior to engaging in the aforementioned adverse actions

when they were informed by Plaintiff as part of the complaint process, *id*. at ¶ 16; and 3)

the adverse retaliatory actions to which Plaintiff has been subjected are a direct result of

Plaintiff having previously engaged in protected activity. *Id*. at ¶ 49.[2]

Plaintiff's own speculative assertions are insufficient to support his retaliation

claim. *See Coleman v. Johnson*, No. DKC-13-3649, 2015 WL 1292951, at *9 (D. Md. Mar.

20, 2015) ("Other than Plaintiff's own speculative assertions that her termination was due

to retaliation, she has put forth no evidence to support this contention."). A subjective

belief that retaliation has occurred is insufficient to support a viable claim. *Goldberg v. B.*

*Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988). Rather, Plaintiff must advance

specific, material evidentiary facts, not unsupported speculation. *Ash v. United Parcel*

*Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986); *accord Grigsby v. Reynolds Metals Co.*,

---

[2] Plaintiff also alleges that he was made to work in a hostile work environment based on retaliation for engaging in prior EEO protected activity, though he does not bring an independent cause of action on this basis. (Compl. ¶ 1.) For the avoidance of doubt, Plaintiff has failed to properly allege or demonstrate a *prima facie* case that he was subjected to a hostile work environment in violation of Title VII. To establish such a claim, a plaintiff must allege and demonstrate that the purported harassment was (1) unwelcome; (2) based on a protected class; and (3) "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *McNeal v. Montgomery Cty.*, 307 F. App'x 766, 776 (4th Cir. 2009) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001)). A plaintiff must not only subjectively perceive the environment to be hostile or abusive, the environment must be one that a reasonable person in the plaintiff's position would objectively find hostile or abusive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). The objective test requires an examination of the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993). Plaintiff does nothing more than suggest he was subjected to a hostile work environment. He does not mention specific conditions, the severity or pervasiveness of any such conditions, nor does he describe how any purported hostile condition interfered with his work performance. Due to Plaintiff's complete failure to make any allegations as to the nature of the purportedly hostile work environment, he has not, and cannot, bring a claim on this basis.

821 F.2d 590, 597 (11th Cir. 1987) (plaintiff cannot create a factual issue of pretext with personal speculation of discriminatory intent). Plaintiff has failed to establish a causal link between his protected activity and the Agency's actions at issue in this matter.

### III.    Even If Plaintiff Can Establish a *Prima Facie* Case, the Agency Has Articulated a Legitimate, Non-Discriminatory Reason for its Adverse Employment Actions.

Even if Plaintiff had adequately pled his discrimination or retaliation claim – which he has not – the Agency has articulated legitimate, non-discriminatory reasons for its employment decisions. The administrative record sets forth Plaintiff's supervisors' reasons for assigning him to complete manual updates CRs. Specifically, another employee, Deborah Smith, was retiring, Plaintiff had the lightest workload among Janis Nero's employees, and CRs were squarely within Plaintiff's position description. (Ex. 4 at 3-4; Ex. 2 at 277-83.)

The other alleged actions were all efforts to provide Plaintiff with counseling and feedback to ensure he had the resources available to him to complete the assigned tasks. The daily reporting requirements were put in place so Plaintiff's supervisors could closely monitor Plaintiff's work progress and immediately intervene if needed, as the work was deadline driven. (Ex. 6 at 227-28.) Moreover, the referral to EAP, Written Counseling Memorandum, and Direct Order were all efforts to provide Plaintiff with the resources needed to complete his work, provide constructive criticism, and clarify expectations. (Ex. 4 at 12, 16-20.) None of these actions resulted in disciplinary action against Plaintiff. (*Id*.)

Likewise, in an effort to ensure Plaintiff could be closely supervised and provided with the resources necessary to complete his tasks, his supervisors were forced to remove his Flexiplace eligibility pursuant to the CBA. (Ex. 7.)  Finally, Plaintiff has not identified any specific instances where he was "berated" or threatened. (Ex. 3.) Rather, the

administrative record demonstrates his supervisors were incredibly patient and understanding with Plaintiff despite consistent refusal to do the work assigned to him. As such, even if Plaintiff had established a *prima facie* case of discrimination or retaliation, the Agency has provided legitimate, non-discriminatory reasons for its actions. Plaintiff has no evidence that these reasons were pretextual.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed or, alternatively, summary judgment should be granted for Defendant on all claims asserted against him.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

_____/s/_____
Kimberly S. Phillips
Assistant United States Attorney
36 S. Charles St., 4th Flr.
Baltimore, MD 21201
Tel: 410-209-4800
Kimberly.Phillips@usdoj.gov