**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JERMAINE STAGGERS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 1:21-cv-00231-ELH |
| | ) | |
| XAVIER BECERRA, | ) | |
| SECRETARY, U.S. DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, | ) | |
|     Defendant. | ) | |
| | ) | |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff Jermaine Staggers purports to bring sex-based employment discrimination and retaliation claims under Title VII. Mr. Staggers has filed an opposition (ECF No. 6) to the Secretary's motion (ECF No. 4), but has failed to demonstrate why the motion should be denied. Nothing in Mr. Staggers' Opposition alters his failure to allege, or his inability to show, that he was unlawfully discriminated or retaliated against under Title VII. For this reason, and the reasons set forth in the Secretary's moving papers, the Secretary respectfully requests that this Court grant his Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

**ARGUMENTS IN REPLY**

**I.     Even if Mr. Staggers Could Identify Similarly Situated Comparators, He Has Failed to Allege, Nor Can He Demonstrate, that Those Comparators were Treated More Favorably.**

Mr. Staggers' attempt to establish a *prima facie* case of discrimination by identifying purported similarly situated comparators ignores the other elemental component of a claim of discrimination predicated on similarly situated comparators – plaintiff must allege and demonstrate that the comparators were treated more favorably under similar circumstances. *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 258 (1981) ("*McDonnell Douglas*

teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."); *Jensen-Graf v. Chesapeake Emp'rs' Ins. Co.*, 616 F. App'x 596, 597 (4th Cir. 2015) (affirming district court's finding that, among other things, plaintiff failed to allege that similarly situated male employees were treated more favorably); *Skipper v. Giant Food Inc.*, 68 F. App'x 393, 400 (4th Cir. 2003) (finding although plaintiff alleged that other similarly situated employees outside the protected class were treated more favorably, they offered no evidence to support such allegations).

Mr. Staggers' identifies Ms. Janice Pinn and Ms. Ronda Bonner-Allen as purported similarly situated comparators without ever identifying how they were treated more favorably under similar circumstances.  (*See* Pl. Opp. at 6-9.)  Conversely, Mr. Staggers concedes that despite only being a GS-12, compared to Mr. Staggers GS-13, Ms. Bonner-Allen was actually assigned two more change requests during the relevant timeframe (32 vs. 30).  (Pl. Opp. at 8.) With regard to Ms. Pinn, Mr. Staggers failed to address the fact that she had different responsibilities as manual updates team lead, including training him, and actually had a greater overall workload during the relevant timeframe.  (*See* Def. Mem. Supp. Dismiss or Summ. J. Ex. 4 at 4 (response to question 15).)  Even if the identified comparators were similarly situated to Mr. Staggers – which the Agency does not concede – Mr. Staggers has failed to demonstrate that those purported comparators were in fact treated more favorably than him, and for this reason, he cannot establish a *prima facie* case of discrimination.

## II.     Mr. Staggers Cites to Inapplicable Case Law in an Effort to Conflate the Discrimination and Retaliation Adverse Action Standards to His Benefit.

In an effort to counter the government's argument that Mr. Staggers has not alleged an adverse employment action for purposes of his discrimination claim, Mr. Staggers improperly cites to caselaw dealing with retaliation claims, rather than discrimination claims.  In so doing,

Mr. Staggers incorrectly argues that a reasonable person standard is the materiality threshold applied to determine whether an employment decision constitutes an adverse action for purposes of a discrimination claim.  (Pl. Opp. at 9 (citing *Burlington N. and Santa Fe. Ry. v. White*, 548 U.S. 53, 71 (2006).)  However, the *White* Court dealt only with the standard applied under the antiretaliation provision of Title VII.  *White*, 548 U.S. at 57, 61 (stating that the Court's conclusion with respect to the antiretaliation provision and acknowledging that the scope of the retaliation provision is broader than that of Title VII's substantive discrimination provision).  Mr. Staggers next cites to *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 785 (D. Md. 2010) to argue that a change in job responsibilities constitutes a materially adverse action.  (Pl. Opp. 9-10.)  Here again, however, the court dealt with a retaliation claim in the cited portion of the case upon which Mr. Staggers relies in an attempt to bolster his discrimination claim.  *Tawwaab*, 729 F. Supp. 2d at 785.  Moreover – and, more importantly – the *Tawwaab* court does nothing more than recognize in dicta that other circuits have held that a change in job responsibilities that are "dirtier, more arduous, less prestigious, [and] objectively inferior" constitute a materially adverse action for purposes of a retaliation claim.  *Id*. (finding that the alleged change in job responsibilities did not constitute a materially adverse action even under the lower bar applied to retaliation claims).

Mr. Staggers then cites to a series of out-of-circuit decisions to support his proposition that "[s]everal courts have recognized that an adverse employment action under Title VII is not limited to a decision that affects monetary considerations, because an employer can make an employee's job undesirable or unbearable without affecting that employee's salary or benefits." (Pl. Opp. at 10) (citing *Torre v. Casio*, 42 F.3d 825, 831 n.7 (3d Cir. 1994); *Collins v. Illinois*, 830 F.2d 692, 702-04 (7th Cir. 1987); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th

Cir. 1987).)  However, in the cited footnote in *Torre*, for example, the court merely acknowledges that plaintiff raised a material fact issue concerning whether his transfer and termination were part and parcel of the same discriminatory scheme, it did not hold that these actions constituted an adverse employment action.  *Torre*, 42 F.3d at 831 n.7.  The court in *Collins* – in the section addressing whether plaintiff's job transfer constituted *retaliation* – found only that this was a question for the jury where plaintiff lost privileges of having her own office, telephone at her desk, printed business cards, and listings in professional publications as library consultant.  *Collins*, 830 F.2d at 702-04.  Finally, *Grigsby* does not recognize that nonmonetary considerations should be accounted for, but rather that when a job evaluation did not immediately affect her salary, but did represent some diminution of her prospects for future increases because of a grade level reduction it could constitute an adverse action.  *Grigsby*, 821 F.2d at 593 n.1.  The Eleventh Circuit only goes so far as to point out that the district court did not specifically address whether plaintiff established each element of a *prima facie* case of discrimination, but assumes without deciding that it did based on the fact that the district court granted summary judgment for the defendant based on the employer's legitimate, nondiscriminatory justification for its actions as opposed to the sufficiency of plaintiff's *prima facie* case.  *Id.* at n.5 (affirming summary judgment in favor of the employer).  Regardless, this case does not support the contention for which it is cited by Mr. Staggers, nor does it support the fact that the alleged change in job responsibilities constitutes an adverse action for purposes of his discrimination claim here.

Here, Mr. Staggers did not experience an adverse action with regard to the purported change in responsibilities alleged in his Complaint.  Rather, in September 2017, a member of the manual updates team retired, and another employee needed to be added to the team.  (*See* Def.

Mem. Supp. Dismiss or Summ. J. Ex. 4 at 3.)  Ms. Nero examined the workloads of her staff and determined Mr. Staggers workload was lighter than her other employees and that as a GS-13 Mr. Staggers would be able to handle the manual updates.  (*Id.*)  Despite Mr. Staggers immediate protestations upon assignment of the manual updates, the updates were included as part of his position description and a typical and expected assignment for someone occupying his position. (*See id*. Ex. 1 at 2-3 (position description); *see also* Ex. 4 at 3.)  Ms. Nero arranged for ample training for Mr. Staggers to become proficient in performing the manual updates and considered his overall workload, determining it to be lighter than her other staff, before assigning him to the manual updates team.  (*Id*. Ex. 4 at 3.)

Accordingly, Mr. Staggers was never transferred, the Medicare manual updates change requests fell squarely within his position description, and his job grade, salary, benefits, and title remained the same.  Mr. Staggers cannot demonstrate he suffered an adverse action when he was assigned the manual updates.  *See Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 423 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (no adverse action found where plaintiff was transferred to a position with substantial responsibility, was commensurate with the employee's federal job grade, and his salary, benefits, and the employee's title remained the same).

Next, Mr. Staggers attempts to argue that the written counseling memo he was given was an adverse action.  (Pl. Opp. at 11-12.)  However, not a single case Mr. Staggers cites to for this proposition finds that a written reprimand in fact constituted an adverse action.  (*Id*. at 11 (internal citations omitted).)  Rather, in three of the four cases cited by Mr. Staggers, the Court explicitly found that the written reprimand did not constitute an adverse action.  *See Smith v. Vilsack*, 832 F. Supp. 2d 573, 583 (D. Md. 2011); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003); *Newman v. Giant Food, Inc.*, 187 F. Supp. 2d 524, 528-29 (D. Md. 2002).  In the

fourth case, *Nichols v. Harford Cnty. Bd. of Educ.*, the Court only goes so far as to say it would not conclude as a matter of law that the reprimand did *not* amount to an adverse action, and nevertheless rules for the employer because plaintiff could not demonstrate that she was treated differently than other similarly situated employees.  189 F. Supp. 2d 325, 342 (D. Md. 2002). Even if the Court were to consider whether the written counseling memo constituted an adverse employment action, the revocation of his ability to work from home does not rise to the level of an "employment injury" and therefore still cannot be found to constitute an adverse action. *Newman*, 187 F. Supp. 2d at 529 (discipline must warn that it could lead to further disciplinary action, such as termination, to constitute an adverse employment action); *Nichols*, 189 F. Supp. 2d at 342 (reprimand could constitute adverse action if it could be understood to lead to a change in benefits or termination).

Mr. Staggers' attempt to tie the revocation of his ability to telework to the written counseling memo to support a purported adverse action (Pl. Opp. at 11-12) likewise fails.  Courts have continuously held that the denial or cancellation of telework requests, compressed work schedules, or alternative work schedules do not constitute an adverse employment action.  *See Terry v. Perdue*, No. JKB-18-31, 2018 WL 4494883, at *5 (D. Md. Sept. 19, 2018) (collecting cases).  Moreover, Mr. Staggers once again attempts to rely on caselaw addressing retaliation claims in order to argue that he has alleged a *prima facie* case of discrimination.  (Pl. Opp. at 11-12) (citing *Barnes v. Charles Cty. Pub. Sch.*, 747 F. App'x 115, 119 (4th Cir. 2018).)  Mr. Staggers has not cited a single case addressing discrimination claims that substantiates his argument that written counseling revoking one's ability to telework constitutes an adverse action.

Mr. Staggers has failed to allege a *prima facie* claim of discrimination and nothing in his Opposition alters this fact.

**III.    Mr. Staggers' Opposition Does Nothing to Obviate the Failings of His Retaliation Claims.**

Unfortunately, Mr. Staggers' misguided effort to buoy his retaliation claims in his Opposition fair no better.  In an attempt to establish temporal proximity, Mr. Staggers avers, "[t]he day after Plaintiff amended his EEOC charge, he was given the written counseling memorandum which gave him unrealistic deadlines for completion of the excessive work and cancelled his Flexiplace schedule."  (Pl. Opp. at 17.)  Mr. Staggers received the counseling memo from Ms. Nero on August 29, 2018.  (*See* Def. Mem. Supp. Dismiss or Summ. J. Ex. 7 (Written Counseling Memo).)  Ms. Nero did not learn of Mr. Staggers EEO complaint until November 2018.  (*See id.* Ex. 4 at 2 (response to question 9).)  Accordingly, as Mr. Staggers has failed to demonstrate the requisite knowledge of his protected activity by Ms. Nero he fails to establish a causal link with the alleged adverse actions.  *See Lewis v. Baltimore City Bd. of Sch. Comm'rs*, 187 F. Supp. 3d 588, 597 (D. Md. 2016) (affirming absence of causal connection when there was no evidence refuting the relevant officials' denials of any knowledge of appellants prior protected activity).

**IV.    Mr. Staggers Failure to Participate in the Discovery Process During the Administrative Proceeding Should Operate to Foreclose the Fishing Expedition He Now Seeks to Undertake Behind the Cloak of Rule 56(d).**

Seeking to delay the adjudication of the Agency's motion, Mr. Staggers has sought refuge in Rule 56(d) and his counsel has submitted a declaration outlining the discovery Mr. Staggers purportedly requires in order to oppose the Agency's arguments.  (ECF No. 6-1, "Wolf Decl.")  To obtain relief under Rule 56(d), a party opposing summary judgment must show "by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition . . . ."  Fed. R. Civ. P. 56(d) (emphasis added); *Nguyen v. CAN Corp.*, 44 F.3d 234,

242 (4th Cir. 1995); *Fairclough v. Bd. of Cty. Comm'rs of St. Mary's Cty., MD*, 244 F. Supp. 2d 581, 586 (D. Md. 2003).

A party must present reasons why it cannot put forth the necessary opposing evidence and must establish that the desired evidence could be sufficient to create a genuine issue of material fact. *Pine Ridge Coal Co. v. Local 8377, Utd. Mine Workers of Am.*, 187 F.3d 415, 421-22 (4th Cir. 1999) (affidavit must put forth the reasons why the nonmovant is unable to present the necessary opposing material); *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) ("The denial of a Rule 56(f)[1] motion for extension should be affirmed where the additional evidence sought for discovery would not have *by itself* created a genuine issue of material fact sufficient to defeat summary judgment.") (emphasis supplied); *Ahmed v. Salvation Army*, CCB-12-707, 2012 WL6761596, at *10 (D. Md. Dec. 28, 2012) ("A Rule 56(d) affidavit cannot conclusorily state that additional discovery is required.  It must specify why facts precluding summary judgment cannot be presented.  This includes identifying the probable facts not available and what steps have been taken to obtain these facts.") (quotation and internal quotation marks omitted), *aff'd*, 549 F. App'x 196 (4th Cir. 2013).

Mr. Staggers' counsel avers that Mr. Staggers has not had the opportunity to conduct even "basic discovery."  (Wolf Decl. ¶ 1.)  Mr. Staggers further states in his Opposition that he "does not have written discovery or deposition testimony necessary for him to identify the issues of material fact necessary to oppose Defendant's motion for summary judgment."  (Pl. Opp. at 19.)  However, this Court has previously found that the "denial of additional discovery is appropriate when the materials sought by the requesting party could have been discovered

---

[1] Effective December 1, 2010, the provisions of former Rule 56(f) were carried forward "without substantive change" in Rule 56(d).  *See* Fed. R. Civ. P. 56, advisory committee note (2010).

earlier, including in the course of administrative discovery." *Kearse v. Berryhill*, No. RDB-17-3028, 2018 WL 6589846, at *9 (D. Md. Dec. 14, 2018) (quoting *Courtney-Pope v. Bd. of Educ. Of Carroll Cty.*, 304 F. Supp. 3d 480, 490 (D. Md. 2018) (additional internal citation omitted)). Moreover, requests for additional discovery must be denied when such requests are not a legitimate attempt to seek the truth but rather an attempt "to find out if [he] has a claim, rather than that [he] has a claim for which [he] needs . . . discovery." *Id*. at *10 (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).

The Agency produced written discovery, conducted witness interviews, combed through correspondence, change request ("CR") reports, EEO Counselor reports, organizational charts, affidavits, interviewed Mr. Staggers himself, and provided the opportunity to rebut his supervisors' affidavits to ensure that his complaint was thoroughly investigated.  (*See generally* exhibits to Def. Mem. Supp. Dismiss or Summ. J.)  The resulting report of investigation produced hundreds of pages outlining the Agency's exhaustive review of Mr. Staggers' allegations.[2]

Further, Mr. Staggers was provided the opportunity to propound both written discovery and conduct depositions during the administrative hearing stage.  (*See* General Case Management Order, attached hereto as **Exhibit A**.)  In fact, Mr. Staggers served the Agency with both interrogatories and requests for production of documents.  (*See* Em. from J. Wolf to C. Te attaching complainant's discovery requests, attached hereto as **Exhibit B**.)  The Agency responded by providing responses to the interrogatories and providing over 900 pages of records. (*See* correspondence between D. Elliott, B. Luchansky, and J. Wolf at 4, attached hereto as

---

[2] The Agency did not include the full report of investigation with its moving papers given its voluminous size.  The 12 exhibits that were included were meant to only illustrate the extensive record in this case.

**Exhibit C**.)  The Agency's document production included numerous emails between Mr. Staggers' supervisors regarding his workload and assignments.  (*See id.*)  Moreover, Mr. Staggers baldly asserts, "Plaintiff has not had the opportunity to depose the comparators or his superior regarding the amount of work the comparators received, or their disciplinary history." (Pl. Opp. at 19.)  On the contrary, Mr. Staggers was not only afforded the opportunity to take depositions, but Agency counsel reached out on multiple occasions in an attempt to schedule the deposition of Ms. Nero on September 10 or 11, 2020.  (*See* correspondence between D. Elliott and J. Wolf attempting to schedule depositions, attached hereto as **Exhibit D**.)  Any inability to conduct "basic discovery" was due to Mr. Staggers' own lack of diligence in pursuing discovery during the administrative proceeding stage.  Moreover, Mr. Staggers failed to respond to the Agency's written discovery requests despite being given a lengthy extension by Agency counsel. (*See* Ex. C.)

Mr. Staggers suggests that he needs to "analyz[e] the contemporaneous communication between Ms. Nero and Mr. Simon and tak[e] their depositions," (Pl. Opp. at 20) and "obtain[] relevant portions of [purported comparators'] personnel records and depos[e] them and Ms. Nero, to determine the nature and scope of their duties and responsibilities, where they performed their work adequately, and the nature and scope of any discipline meted out against them by Janis Nero and/or Carlos Simon (or lack thereof)."  (Wolf Decl. ¶ 2.)  But this is discovery that could have taken place during administrative discovery.  *Kearse*, 2018 WL 6589846, at *10 (finding a request for depositions that could have taken place during administrative discovery for employees who were interviewed at the time of the Agency's investigation amounts to a "purely speculative hope" that those employees will recant their testimony and reveal a biased decision).

Here, Mr. Staggers' supervisors were interviewed during the Agency's investigation. (Def. Mem. Supp. Dismiss or Summ. J. Exs. 4, 6.)  Mr. Staggers' supervisors were asked about their treatment of other allegedly similarly situated employees.  (*See id.* Ex. 4 at 5; Ex. 6 at 6.) The fact that Mr. Staggers now seeks this information is no more than a purely speculative hope that previously interviewed supervisors will recant their testimony or, perhaps, an attempt to find out if he has a claim, rather than that he has a claim for which he needs discovery.  Either way, Mr. Staggers could have taken the requested depositions and timely engaged in written discovery during administrative discovery, but failed to do so.

At bottom, when properly considering Mr. Staggers' Rule 56(d) request in light of the evidence compiled in the record and in the context of the specific issues presented by his claims, counsel's declaration fails to explain what particular facts Mr. Staggers intends to learn through the requested discovery and how these facts would create a genuine dispute of material fact sufficient to defeat summary judgment in this case.  Evidently, Mr. Staggers hopes that the document discovery and depositions of his supervisors somehow will contradict the statements they have already submitted.  Mr. Staggers does not predict what any witness will say, what information he expect the documents to contain, and how any of this discovery will assist him in averting summary judgment.

This Court and the Fourth Circuit frequently have cited the comprehensive materials assembled through a federal agency's investigation of an EEO complaint as proper basis to adjudicate a summary judgment motion without permitting additional discovery.  *See Laguerra v. U.S. Dep't of Treasury*, TDC-14-2701, 2016 WL 3455373, at *6 (D. Md. June 20, 2016) (citing *Landino v. Sapp*, 520 F. App'x 195, 199 (4th Cir. 2013); *Boyd v. Gutierrez*, 214 F. App'x

322, 323 (4th Cir. 2007)), *aff'd*, No. 16-1832, 2016 WL 6958460 (4th Cir. Nov. 29, 2016); *Radi v. Sebelius*, 434 F. App'x 177, 179 (4th Cir. 2011); *Amirmokri*, 437 F. Supp. 2d at 421.

Mr. Staggers' counsel's declaration fails to specify unmet discovery needs that are relevant to the central issues in this case.  Quite the contrary, it is based purely on speculation that evidence might be uncovered that would bolster his presently unsupported claims, which is not a proper function of Rule 56(d).  *McKinnon v. Blank*, DKC-12- 1265, 2013 WL 781617, at *10-12 (D. Md. Feb. 28, 2013) (denying plaintiff's Rule 56(d) request because, in light of information already available to the plaintiff from the agency's ROI, it amounted to "a fishing expedition for evidence of pretext").  Summary judgment is appropriate when the record before the court, along with an affidavit from counsel for plaintiff, reveals no rational basis for believing that through discovery the plaintiff can discover evidence essential to his opposition. *Kearse*, 2018 WL 6589846, at *10 (granting summary judgment and denying plaintiff's motion to defer ruling on defendant's motion pending discovery).

**CONCLUSION**

For the foregoing reasons, and those reasons stated in the Secretary's opening memorandum of law, the Court should grant the Secretary's Motion to Dismiss or, in the Alternative, for Summary Judgment.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

_____/s/_____
Kimberly S. Phillips
Assistant United States Attorney
36 S. Charles St., 4th Fl.
Baltimore, MD 21201
Tel: 410-209-4800
Kimberly.Phillips@usdoj.gov