# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JERMAINE STAGGERS,

      *Plaintiff,*

   **v.**

XAVIER BECERRA, Secretary, U.S.
Department of Health and Human Services,

      *Defendant.*

Civil No. 1:21-cv-00231-JRR

## MEMORANDUM OPINION

This matter comes before the court on Defendant Secretary of the United States Department of Health and Human Services ("HHS") Xavier Becerra's Motion for Summary Judgment. (ECF No. 45; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

## I.   BACKGROUND

### A.   Undisputed Material Facts

Plaintiff Jermaine Staggers has worked for HHS since 1996. (Pl.'s Opp'n, Jermaine Staggers EEO Affidavit, Exhibit C, ECF No. 48-8 ¶ 3.) Since 2010, Plaintiff has been employed as a Health Insurance Specialist GS-0107-13 in the Division of Issuances ("DI"), Issuances, Records and Information Systems Group ("IRISG"), Office of Strategic Operations and Regulatory Affairs ("OSORA"), Centers for Medicare and Medicaid Services ("CMS"), for HHS in Baltimore, Maryland. *Id.* ¶¶ 1, 4. For much of the relevant period at issue in this action, as a Health Insurance Specialist, Plaintiff reported to Janis Nero, the Deputy Director of IRISG, as his

first line supervisor, and Carlos Simon, the Director of IRISG, as his second line supervisor. (Def.'s Mot., Janis Nero Dep., Exhibit 5, ECF No. 45-7, 9:9-12; 20:18-20; Def.'s Mot., Carlos Simon Dep., Exhibit 4, ECF No. 45-6, 10:4-5; Pl.'s Opp'n, Jermaine Staggers Dep., Exhibit B, ECF No. 48-7, 181:24-182:3.)

As a Health Insurance Specialist, Plaintiff performs various tasks involving change requests.[1]  (Pl.'s Opp'n, Jermaine Staggers Aff., Exhibit D, ECF No. 48-9 ¶ 1.)  Some Health Insurance Specialists are also assigned to the manual updating team, which implements updates to the manuals that are included in specific change requests.  (Simon Dep. 25:4-10; Nero Dep. 23:20-24:12.)  In determining work assignments, management considers an employee's experience, prior manual assignments, and other workload.  (Simon Dep. 56:17-21.)

In August 2017, Nero began making plans to replace one of the team members responsible for manual updating.  (Def.'s Mot., Janis Nero Aff., Exhibit 6, ECF No. 45-8 ¶ 12.)  On August 25, 2017, Nero informed Plaintiff by email that he would be joining the manual updating team and that Health Insurance Specialists Deborah Smith and Janice Pinn would train him.  (Def.'s Mot., Nero Email, Exhibit 7, ECF No. 45-11 at 2.)  According to Nero, Plaintiff's workload was lighter than others and he had the "bandwidth" to work on the manual updating; therefore, Plaintiff was selected to be on the manual updating team.  (Nero Dep. 45:6-15.)  In response, Plaintiff expressed to Nero that he had enough work and could not take on any more assignments.  (Nero Email at 3.)  Nonetheless, Nero informed Plaintiff it was necessary that he perform manual updates and that Smith would train him before she retired.  (Nero Aff. ¶ 12.)  For a couple of weeks in August and September 2017, Plaintiff trained with Smith on performing manual updates.  (Staggers Aff. ¶ 3;

---

[1] A change request is a document that is generated by one of the IRISG's business owners, such as CMS.  (Nero Dep. 23:20-24:1.)  Change requests contain different written instructions, including to create new policies or revise prior policies, and cover a variety of subject areas, including fee service claims, financial management, claims processing, and Medicare beneficiaries.  (Pl.'s Opp'n, Janice Pinn Dep., Exhibit F, ECF No. 48-11, 20:1-8.)

Nero Aff. ¶ 12.)  Subsequently, Plaintiff trained with Pinn until Nero stopped his training sometime in 2018.  (Staggers Dep. 241:11-15; Staggers Aff. ¶ 3; Nero Dep. 76:18-21.)

On February 1, 2018, Plaintiff filed a Prevention of Workplace Harassment claim against Nero and Simon.  (Pl.'s Opp'n, Def.'s Answers to Pl.'s First Set of Interrog., Exhibit V, ECF No. 48-27, No. 20.)  In the Prevention of Workplace Harassment claim, Plaintiff made the following allegations about Nero:

> Assigned Mr. Staggers the additional tasks of doing the Manual Updating Process, which is different from Mr. Staggers' normal body of work, and is holding him accountable for the work without allowing Mr. Staggers sufficient time to be fully trained on the task.
>
> Continually assigns Mr. Staggers tasks that cannot be completed prior to end of Mr. Staggers duty day and does not approve Mr. Staggers' requests for credit hours or overtime.
>
> Micro-manages Mr. Staggers by continually following up on status of assigned tasks.
>
> Rated Mr. Staggers' 2017 Performance Appraisal at 3.8, which Mr. Staggers stated is down from his 2016 Performance Appraisal of 4.6.

(Pl.'s Opp'n, February 2018 Email, Exhibit CC, ECF No. 48-34.)

On March 29, 2018, Plaintiff contacted an EEOC counselor regarding his allegations. (Def.'s Mot., Final Agency Decision, Exhibit 13, ECF No. 45-15 at 3.)  Subsequently, on April 13, 2018, Simon referred Plaintiff to the Employee Assistance Program ("EAP").  (Simon Aff. ¶¶ 47-48.)  In Simon's view, Plaintiff's "behavior towards work and work performance had been deteriorating since assigning or attempting to assign him manual updates." *Id.* ¶ 47.  When efforts to resolve Plaintiff's complaints were unsuccessful, Plaintiff filed a formal EEOC complaint on July 19, 2018.  (Def.'s Answers to Pl.'s First Set of Interrog. No. 20.)

3

On August 29, 2018, Nero issued Plaintiff a Written Counseling Memorandum ("WCM"). (Def.'s Mot., Written Counseling Memo, Exhibit 10, ECF No. 45-12 at 1.)  The WCM stated in part:

> This notice of written counseling is a result of your inappropriate handling of manual updating assignments and failure to meet established deadlines. You have also missed the deadline to submit the list of CRs[2] with manual updates from the week of August 13-17, 2018.
>
> We performed an audit to ensure that all manual updates are posted by the respective implementation date. The audit revealed that you failed to complete several manual updates that have been assigned to you over the past year.
>
> You have completed the manual updating task in the past however you elected not to complete several assigned manual updates and not notify management . . . .
> …
>
> I am hereby directing you to complete all assigned CRs prior to the implementation date, meet established deadlines and respond timely to all management requests.
> …
>
> Per this memo we're providing more time for you to successful update 4 CRs by 9/6/18. Provide me with status updates via email at 9:00 a.m., at noon and at 3:00 p.m. or at the conclusion of your tour of duty whichever comes first. I expect you to continue providing updates on this same schedule each day until you complete the aforementioned assignments. You are directed to use the SOP that was sent to you to complete this work. If you have questions or need assistance you should contact me.
>
> You have successfully completed multiple manual updates since September 2017 validating that you are trained and fully capable of completing the manual update task. Moreover, you have previously demonstrated the ability to prioritize your work without difficulty or assistance from your manager . . . .

---

[2] CRs refers to "change requests."

(Written Counseling Memo at 1-2.)  In response to the WCM, Plaintiff expressed to Nero and Simon that completing the manual updates would be difficult because of a lack of training, unreasonable deadlines, and other obligations Nero and Simon gave him.  (Pl.'s Opp'n, September 4, 2018, Email, Exhibit L, ECF No. 48-17.)  Subsequently, Plaintiff emailed Nero indicating that he attempted to complete the necessary work identified in the WCM.  (Pl.'s Opp'n, October 22, 2018, Email, Exhibit M, ECF No. 48-18.)

On August 28 and September 20, 2018, Plaintiff amended his EEOC complaint.  (Final Agency Decision at 3.)  On November 8, 2018, Nero issued a Direct Order directing Plaintiff to complete manual updates for seven overdue change reports by November 15, 2018.  (Def.'s Mot., Direct Order, Exhibit 11, ECF No. 45-13.)  The Direct Order stated in part:

> The purpose of this notice is to give you a direct order to complete several of your assigned manual updates. You have several past due assignments that are adversely affecting Agency Issuances operations.
>
> Complete all manual updates for the following CRs by 3PM on **Thursday, November 15, 2018:**
>
> - CR 10386 originally assigned to you on 4/24/18
> - CR 10836 originally assigned to you on 8/14/18
> - CR 10839 originally assigned to you on 8/14/18
> - CR 10871 originally assigned to you on 9/10/18
> - CR 10918 originally assigned to you on 9/10/18
> - CR 10937 originally assigned to you on 10/30/18
> - CR 10789 originally assigned to you on 10/30/18
>
> November 15, 2018 is more than enough time to complete the aforementioned past due assignments. You have successfully completed multiple manual updates since September 2017, validating that you are fully capable of completing the manual update task. Moreover, you have previously demonstrated the ability to prioritize your work without difficulty. I will send you an appointment for Thursday, November 15, 2018 at 3:30 PM. I expect you to accept the appointment, attend the meeting and be prepared to review and discuss the aforementioned past due tasks.

> Should you encounter an obstacle beyond your control, you must contact me by phone or in person immediately for further direction. I am here to provide you continuous feedback and close supervision as you work to address these past due assignments, and future assignments associated with the Agency's Issuances mission. Failure to follow this direct order may result in disciplinary action being taken against you, up to and including your removal from the Federal service.

*Id.*  On November 14, 2018, Plaintiff filed a third request to amend his EEOC complaint.  (Final Agency Decision at 3.)  In November 2018, Plaintiff was removed from the manual updating team. (Staggers Dep. 98:21-99:8.)

On September 1, 2020, the EEOC issued an order dismissing the complaint, and remanding it to HHS for issuance of a Final Agency Decision.  (Pl.'s Opp'n, EEOC Order, Exhibit S, ECF No. 48-24)  On October 29, 2020, HHS issued a final decision concluding that Plaintiff had not been subject to unlawful discrimination, harassment, or retaliation.  (Pl.'s Opp'n, HHS decision, Exhibit T, ECF No. 48-25.)  The instant suit followed.

**B.**    **Procedural History**

On January 27, 2021, Plaintiff filed his Complaint against Defendant, which set forth two counts: (Count I) Gender Discrimination and (Count II) Retaliation, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*.  (ECF No. 1.)  On April 5, 2021, Defendant filed a motion to dismiss, or, in the alternative, for summary judgment, which was granted in part and denied in part.  (ECF Nos. 3 and 15.)  The motion, construed as a motion to dismiss, was granted as to Plaintiff's gender discrimination claim (Count I) and denied as to Plaintiff's retaliation claim (Count II).  (ECF No. 15.)  The court (Hon. Ellen Lipton Hollander, presiding) permitted Count II to go forward on the basis that Plaintiff adequately alleged that he

engaged in a protected activity (filing the EEOC Complaint), alleged an adverse action (the Direct Order), and alleged a causal connection between the two.[3]  (ECF No. 14 at 48.)

On January 7, 2022, Defendant filed an Answer.  (ECF No. 18.)  The parties have since engaged in discovery.  Now that discovery has closed, Defendant moves for summary judgment on Plaintiff's retaliation claim on the following grounds: (1) Plaintiff fails to set forth direct or indirect evidence of retaliation; (2) an employer does not lose the ability to review an employee's conduct and, if necessary, to discipline an employee merely because the employee has made a discrimination claim; (3) there is no causal connection between the protected activity and the Direct Order; and (4) even if Plaintiff has established a prima facie case, Defendant has articulated a legitimate, non-discriminatory reason for its adverse action, and Plaintiff cannot demonstrate pretext.  (ECF No. 45-1 at 12-18.)[4]

## II.   **LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether

---

[3] As discussed below, to establish a prima facie case of retaliation, Plaintiff must demonstrate that (1) he engaged in a protected activity; (2) his employer took an adverse action against him; and (3) a causal link exists between the protected activity and the adverse action.  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).  *See* Section III.B., *infra.*

[4] For consistency, the court cites to ECF page numbers.

sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## III.   ANALYSIS

### A.   Title VII Principles / McDonnell Douglas Framework

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel*, 895 F.3d 317, 326-27 (4th Cir. 2018).

"A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). "To satisfy ordinary principles of proof, [a plaintiff] must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x 168, 175 (4th Cir. 2020) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)).

Absent direct evidence, a plaintiff must establish a *prima facie* case pursuant to the *McDonnell Douglas* standard. *McDonnell Douglas Corp.*, 411 U.S. at 802. Pursuant to the *McDonnell Douglas* standard, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 254. "To establish a 'presumption' is to say that a finding of the predicate fact (here, the prima facie case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful discrimination)." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (quoting 1 D. Louisell & C. Mueller, Federal Evidence § 67, p. 536 (1977)).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [the employment action]." *McDonnell Douglas*

*Corp.*, 411 U.S. at 802.  "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 254-55).  "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citations omitted).  "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hicks*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 253).

    In *Mitchell v. Data General Corporation*, the Fourth Circuit noted that "[w]hile the proof scheme in a discrimination case can make the summary judgment analysis somewhat trickier, a defendant can still obtain a summary judgment in one of two ways."  12 F.3d 1310, 1316 (4th Cir. 1993).  A defendant "can demonstrate that the plaintiff's proffered evidence fails to establish a prima facie case, or, if it does, the defendant can present evidence that provides a legitimate nondiscriminatory explanation about which the plaintiff does not create a factual dispute." *Id.*; *see Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (explaining that "[a]n employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act").  "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 943 (4th Cir. 1992)).

Here, Defendant argues it is entitled to summary judgment on both bases.  (ECF No. 45-1 at 12-20.)  Accordingly, the court must determine (1) whether Plaintiff has presented evidence sufficient to establish a prima facie case, and, if so, (2) whether Plaintiff has generated a genuine dispute of material fact as to Defendant's proffered legitimate, non-discriminatory explanation for issuance of the Direct Order.  *Mitchell*, 12 F.3d at 1316.

### B.   Retaliation

As stated earlier, to establish a prima facie case of retaliation, Plaintiff must demonstrate that (1) he engaged in a protected activity; (2) his employer took an adverse action against him; and (3) a causal link exists between the two.  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).  "When a plaintiff's case is presented under the *McDonnell Douglas* proof scheme in response to a defendant's motion for summary judgment, the plaintiff must present admissible evidence to establish a prima facie case."  *Mitchell*, 12 F.3d at 1315.  "Although the proof scheme is staged with shifting burdens, such discrimination cases may nevertheless be evaluated under established summary judgment principles."  *Id.*  Here, therefore, Defendant must demonstrate that Plaintiff's "proffered evidence fails to establish a prima facie case."  *Id.* at 1316.  In response, Plaintiff must provide "evidence from which a reasonable factfinder could conclude that" Plaintiff engaged in a protected activity, Defendant took an adverse action against him, and that a causal connection exists between the protected activity and the adverse action.  *Dowe*, 145 F.3d at 656.

#### 1.   Protected Activity

"Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'"  *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)).  It "includes an employee's opposition to what he or she believes is an unlawful employment practice."  *Bowman v. Balt. City*

*Bd. of School Commissioners*, 173 F. Supp 3d 242, 248 (D. Md. 2016).  In the instant case, it is undisputed that Plaintiff engaged in protected activity by filing a discrimination charge with the EEOC.  *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998) (concluding that the plaintiff engaged in a protected activity when she filed a discrimination charge with the EEOC.  Accordingly, Plaintiff satisfies the first prong of a prima facie case.

### 2.   *Material Adverse Action*

To satisfy the second prong, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations and quotations omitted)).  "The Supreme Court emphasized that the 'materiality' requirement was necessary to ensure that only significant harms would be actionable." *Perkins v. Int'l Paper Co.*, 936 F.3d 196 (4th Cir. 2019) (quoting *Burlington N.*, 548 U.S. at 63).

The Supreme Court's decision in *Burlington Northern & Santa Fe Ry. v. White* guides this court's analysis:

> We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998); *see Faragher*, 524 U.S. at 788 (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The antiretaliation provision seeks to prevent

employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson*, 519 U.S. at 346. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid.* And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *See* 2 EEOC 1998 Manual § 8, p. 8–13.

We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings. We have emphasized the need for objective standards in other Title VII contexts, and those same concerns animate our decision here. *See, e.g., Suders*, 542 U.S. at 141 (constructive discharge doctrine); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (hostile work environment doctrine).

We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, supra, at 81–82. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. *Cf., e.g., Washington, supra*, at 662 (finding flex-time schedule critical to employee with disabled child). A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. *See* 2 EEOC 1998 Manual § 8, p. 8–14. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others." *Washington, supra*, at 661.

Finally, we note that contrary to the claim of the concurrence, this standard does not require a reviewing court or jury to consider "the nature of the discrimination that led to the filing of the charge." *Post*, at 2420 (ALITO, J., concurring in judgment). Rather, the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the

> materiality of the challenged action and the perspective of a
> reasonable person in the plaintiff's position, we believe this standard
> will screen out trivial conduct while effectively capturing those acts
> that are likely to dissuade employees from complaining or assisting
> in complaints about discrimination.

548 U.S. 53, 68-70 (2006).

Emphasizing that the analysis focuses on the circumstances of the particular case, the

Supreme Court explained:

> To be sure, reassignment of job duties is not automatically
> actionable. Whether a particular reassignment is materially adverse
> depends upon the circumstances of the particular case, and "should
> be judged from the perspective of a reasonable person in the
> plaintiff's position, considering 'all the circumstances.'" *Oncale*,
> 523 U.S. at 81. But here, the jury had before it considerable evidence
> that the track laborer duties were "by all accounts more arduous and
> dirtier"; that the "forklift operator position required more
> qualifications, which is an indication of prestige"; and that "the
> forklift operator position was objectively considered a better job and
> the male employees resented White for occupying it." 364 F.3d, at
> 803 (internal quotation marks omitted).

548 U.S. 53, 68-70 (2006).  On this basis and considering the full record, the *Burlington Northern*

Court concluded that "a jury could reasonably conclude that the reassignment of responsibilities

would have been materially adverse to a reasonable employee."  *Id.* at 70.

Here, the precise issue is whether Defendant's alleged retaliatory conduct (issuing the

Direct Order) was materially adverse, which is to say would it dissuade a reasonable employee

from engaging in protected activity.  Defendant contends that Plaintiff admits he did not consider

the Direct Order to be disciplinary in nature.  (ECF No. 45-1 at 16 n.5.)  In response, Plaintiff

asserts that this court previously identified the Direct Order as a materially adverse action and that

"[f]ederal district courts have found that 'the threat of termination would plainly dissuade a

reasonable worker from filing a . . . EEO complaint.'"  (ECF No. 48-1 at 15 quoting *Marley v.*

*Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, No. GJH-17-1902, 2018 U.S. Dist.

14

LEXIS 160899, *19 (D. Md. 2018)).

As an initial matter, in the court's memorandum opinion at ECF No. 14, the court concluded that "at this juncture, [Plaintiff] has adequately alleged that the Direct Order constituted an adverse action for the purposes of a Title VII retaliation claim." (ECF No. 14 at 48.) The court allowed the retaliation claim to proceed on the basis that at the motion to dismiss stage, it was plausible both that the Direct Order was a materially adverse action and that a causal connection existed between Plaintiff's EEOC complaint and issuance of the Direct Order. To be clear, however, the court made no finding or determination that either, in fact, was (or is) the case – rather, under the Rule 12(b)(6) rubric, the court found the Complaint adequately stated a claim. At the summary judgment stage with a fully developed evidentiary record, the standard is quite different, as is Plaintiff's burden. As explained below, the court finds Plaintiff has not met his burden imposed by Rule 56, Title VII, and controlling case law.

Plaintiff fails to offer sufficient evidence to create a genuine issue of material fact that the Direct Order constitutes a materially adverse action. The full record before the court demonstrates that no reasonable juror could conclude that the Direct Order "was a significant harm that would have dissuaded a reasonable worker from making a charge of discrimination." *Noonan v. Consolidated Shoe Co., Inc.*, 84 F.4th 566, 575 (4th Cir. 2023). Indeed, it did not dissuade Plaintiff from further amending his EEOC complaint six days later. (Final Agency Decision at 3.) *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 572 (2d Cir. 2011) (noting that while it is an objective test, it is relevant that the plaintiff "himself was not deterred from complaining").

On November 8, 2018, Nero issued Plaintiff the Direct Order. (Def.'s Mot., Direct Order, Exhibit 11, ECF No. 45-13 at 1.) On November 14, 2018, Plaintiff amended his EEOC complaint.

(Final Agency Decision at 3.)  Further, Plaintiff testified at deposition the Direct Order was not disciplinary in nature:

> Q.   And jumping ahead to the direct order, do you know what I'm referring to?
>
> A.   Yes.
>
> Q.   Was that disciplinary in your view?
>
> A.   No.
>
> Q.   Why not?
>
> A.   Because there was no action.  No punishment in that.
>
> Q.   Okay.
>
> A.   But there were threats in that memo of termination if the work wasn't completed.

(Stagger Dep. 219:17-220:4.)  Nero provided that the Direct Order did not harm Plaintiff because Plaintiff "basically ignored the direct order."  (Nero Aff. ¶ 100.)  Plaintiff further indicated that twelve days later, on November 20, 2018, Nero informed him that all the manual updates contained in the Direct Order were given to other staff to complete.  (Staggers Aff. ¶ 91.)

The court recognizes that "changes to the terms, conditions, or benefits of the plaintiff's employment are factors to be considered when evaluating 'all the circumstances[]' [and] the lack of such changes is not dispositive on the adverse action component of a retaliation claim." *Williams v. Prince William Cnty., Va.*, 645 F. App'x 243, 245 (4th Cir. 2016) (quoting *Burlington N.*, 548 U.S. at 64, 71).  The court is further mindful that a letter threatening termination has been found to constitute an adverse action, *see Barnes v. Charles Cnty. Pub. Schools*, 747 F. App'x 115, 119 (4th Cir. 2018), however, the adverse action "should be judged from the perspective of a reasonable person in the plaintiff's position, including all the circumstances."  *Burlington N.*, 548

U.S. at 71.   Importantly, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm[.]"  *Id.* at 67; *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011) (concluding that the purported threat of termination was not material adverse as a matter of law because, in part, it was never carried out).

Here, putting aside his express admission that he did not consider the Direct Order an adverse action, Plaintiff fails to provide evidence on which a reasonable jury could rely to find that the Direct Order harmed or limited his employment status or workplace opportunities, or led to any other adverse condition or action.  *See Burlington N., supra.; Nam v. 2012 Inc.*, No. CV DKC 15-1931, 2016 WL 107198, at *6 (D. Md. Jan. 11, 2016) (concluding that a reasonable person would not find a letter stating that "[t]his is an offense that could result in termination if it happens again" to be a materially adverse employment action because it "merely informed [the] [p]laintiff that he could be terminated if he committed another offense"); *Stoyanov v. Mabus*, 126 F. Supp. 3d 531, 550-51 (D. Md. 2015) (concluding that "[t]he letter of reprimand itself, even when assessed under the reasonable employee standard, is not an adverse employment action") citing *Mackall v. Colvin*, No. ELH–12–1153, 2015 WL 412922, at *25 (D. Md. Jan. 29, 2015) (finding that a letter of reprimand and a poor performance evaluation, even if they lead to ineligibility for a bonus, do not constitute an adverse employment action in a retaliation case)); *Muldrow v. Blank*, PWG-13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014) (stating that, "[e]ven with the lower bar, none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee AWOL; or issuing a personal improvement plan, an Attendance Warning, a verbal reprimand, a formal letter of reprimand, or a proposed

termination") (internal citation marks omitted)).  While a letter threatening disciplinary measures, including termination, may constitute a materially adverse action in certain circumstances, *see e.g., Barnes*, *supra*, in the circumstances of this case, Plaintiff fails to offer evidence to generate a dispute of fact on this issue.  Accordingly, Plaintiff fails to establish the second prong of a prima facie case.[5]  For purposes of completeness, the court will address the third prong of a prima facie case.

### 3.    *Causal Connection*

To satisfy the third prong, a plaintiff must a show a causal connection "between the protected activity and the adverse employment activity."  *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250.  "Stated differently, a plaintiff must show that his employer 'took the adverse action because of the protected activity.'"  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (quoting *Bryant v. Aiken Regional Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003).  The Fourth Circuit has held that "establishing a 'causal relationship' at the prima facie stage is not an onerous burden."  *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 335 (4th Cir. 2018).  "Purported victims of retaliation do not have to show at the prima facie stage that their protected activities were but-for causes of the adverse action."  *Id.* (citing *Foster*, 787 F.3d at 251).

"A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes."  *Roberts v. Glenn Indus. Group, Inc.*, 988 F.3d 111, 123 (4th Cir. 2021) (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783-84 (4th Cir. 2021)).  "A plaintiff may establish the existence of facts that 'suggest[] that the adverse action occurred because of the protected activity.'"  *Id.* (quoting *Johnson*, 839 F. App'x at 784 and citing *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (recognizing that "relevant evidence may be used

---

[5] Even if Plaintiff could establish a prima facie case, Plaintiff utterly fails to rebut the legitimate, non-discriminatory reasons for issuance of the Direct Order on which Defendant relies.

to establish causation")).  "A plaintiff may also establish that 'the adverse act bears sufficient temporal proximity to the protected activity.'"  *Id.* (quoting *Johnson*, 839 F. App'x at 784).  "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action."  *Id.*

"[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a prima facie case of causation where the temporal proximity is 'very close.'"  *Jenkins v. Gaylord Ent. Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)); *see Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 99 (2016) (explaining that "a court will not infer a causal link based on temporal proximity alone unless the adverse action occurred very close to, or shortly after, the defendant became aware of the protected activity") (internal citations and quotation marks omitted)).  "In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'"  *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).  "Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation."  *Id.*; *see Clark v. Snuipa II Inc.*, No. 8:10-cv-02027-AW, 2011 WL 5439000, at *5 (D. Md. Nov. 8, 2011) (concluding that while the complaint failed to allege dates for the court to consider the temporal proximity, the plaintiff adequately alleged that the defendant fired her because she complained of sexual harassment).

The precise issue is whether Plaintiff adequately demonstrates that his EEOC complaint caused Defendant to issue the Direct Order.  Defendant argues that Plaintiff provides no basis beyond temporal proximity and speculation for the alleged causal connection between the EEOC

activity and the Direct Order.  (ECF No. 45-1 at 13.)  Plaintiff contends that he does not rely on temporal proximity alone; rather, Plaintiff points to alleged retaliatory conduct and animus directed at him in the period between his amended EEOC Complaint and the Direct Order.  (ECF No. 48-1 at 27.)

The court agrees that Plaintiff provides sufficient evidence to support a causal connection between the EEOC activity and the Direct Order.  *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 335 (4th Cir. 2018) (establishing a 'causal relationship' at the prima facie stage is not an onerous burden").  The record before the court demonstrates that Plaintiff's protected activity began as early as February 2018 (filing of the EEOC complaint) and continued through November 2018, when Plaintiff amended his EEOC complaint for the third time.  While it is not entirely clear when Defendant became aware of Plaintiff's EEOC complaint, Plaintiff's EEOC activity was ongoing from February 2018 through November 2018; and Simon testified that he learned Plaintiff contacted the EEOC office around February 2018.  (Simon Dep., at 36:10-17.)   Simon further testified that he may have had a conversation with Nero about Plaintiff's EEOC activity around February 2018.  *Id.* at 37:17-38:7.  Nero testified that she learned Plaintiff contacted the EEOC office around August of 2018.  (Nero Dep. 89:10-12.)  Plaintiff further provides that he believed Defendant issued the Direct Order, in part, because of the filing of the EEOC complaint. Specifically, in his deposition, Plaintiff testified:

> Q.     Okay. Do you believe that this direct order was issued to retaliate against you for filing your EEO complaint?
>
> MR. SADRI: Objection to the extent it calls for a legal conclusion.  But you can answer.
>
> A.     I believe that's one of – also one of the reasons.
>
> …

Q.      So you testified that this direct order, at least partially was issued in your view because you had contacted the EEO office, is that right?

A.      That's what I believe, one of the reasons, yes.

Q.      And the other reason was – correct me if I'm wrong, because of things that you said in conversations with Ms. Nero?

A.      I don't recall saying that.

Q.      Okay. So am I right that you think that this was issued – the direct order was issued partially because you reached out to the EEO office?

A.      Yes, one of the reasons, yes.

(Staggers Dep. 242:17-24; 244:15-245:5.)

In sum, Plaintiff satisfies the first and third prongs to state a prima facie retaliation claim, but fails to establish the second prong; therefore, Plaintiff fails to establish a prima facie case for retaliation. Even if Plaintiff had established a prima facie case, Plaintiff fails to rebut Defendant's legitimate, non-discriminatory reasons for issuance of the Direct Order.[6]

**C.      Legitimate, Non-Discriminatory Reasons and Pretext**

Defendant contends that it has set forth legitimate, non-retaliatory reasons for issuing Plaintiff a Direct Order.  (ECF No. 45-1 at 18.)  Specifically, Defendant contends that Plaintiff refused to complete his assigned work, completed his work incorrectly, and the general deterioration of his work had an adverse impact on HHS operations.  *Id.*  The record before the court demonstrates that Defendant has provided a "legitimate, non-retaliatory reason" for issuing

---

[6]  As discussed earlier, "[u]nder the *McDonnell Douglas* scheme, as clarified in *Hicks*, once a prima facie case is established, the burden shifts to the employer to provide a legitimate nondiscriminatory explanation for the adverse employment action taken."  *Mitchell*, 12 F.3d at 1317.  "If the employer meets this burden, then the presumption created by the prima facie case is rebutted and simply 'drops out of the picture.'"  *Id.* (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510 (1993)).  "The evidence, however, that was offered to establish the prima facie case remains in the case, together with any evidence presented to show that the employer's explanation was untrue or pretextual."  *Id.*

the Direct Order, specifically, the thorough record of admissible evidence documenting Plaintiff's poor and problematic work performance. *See Alexander v. Bloomingdale's Inc.*, 2019 WL 2162286, at *17 (D. Md. May 17, 2019) (explaining that the defendant's evidence that it warned the plaintiff "repeatedly that her performance was dissatisfactory also establishes the employer's 'legitimate, non-retaliatory reason for her termination, namely, her well-documented performance issues'") (quoting *Myles-Anderson*, 2017 WL 881812, at *4)); *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (explaining that "[j]ob performance and relative employee qualifications are widely recognized as a valid, non-discriminatory basis for any adverse employment decision") (citing *Burdine*, 450 U.S. at 258-79 and *Young v. Lehman*, 748 F.2d 194, 198 (4th Cir. 1984)).

According to Simon's affidavit, Plaintiff's "behavior towards work and work performance had been deteriorating since assigning or attempting to assign him manual updates." (Def.'s Mot., Carlos Simon Aff., Exhibit 9, ECF No. 45-11 ¶ 47.)  Further, Defendant offers evidence that Plaintiff was behind on completion of his assigned manual updates that required immediate attention. *Id.* ¶ 61.  Nero testified that multiple fruitless efforts were made and steps taken to get Plaintiff simply to complete his manual assignments.  (Nero Aff. ¶¶ 40, 41, 71, 84, 91.)  The last step Nero took was issuing Plaintiff the Direct Order, *id.* ¶ 97, stating that "[t]he purpose of this notice is to give you a direct order to complete several of your assigned manual updates. You have several past due assignments that are adversely affecting Agency Issuances operations."  (Direct Order, ECF No. 45-13.)  Accordingly, Defendant has articulated a legitimate, non-retaliatory reason for issuance of the Direct Order.

Because Defendant met its burden of production, "the burden shifts back to [Plaintiff] to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true

reasons, but were a pretext for discrimination.'" *Hill*, 354 F.3d at 285 (quoting *Reeves*, 530 U.S. at 143); *see Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001) (explaining that "[o]nce an employer offers a legitimate, non-discriminatory explanation for the challenged employment decision, 'the plaintiff must than have an opportunity to prove . . . that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" (quoting *Burdine*, 450 U.S. at 253)). "A plaintiff could accomplish this goal 'by showing that the employer's proffered explanation is unworthy of credence.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). In *Holland v. Washington Homes, Inc.*, the Fourth Circuit explained:

> Accordingly, the burden to demonstrate pretext has "merg[ed] with the ultimate burden of persuading the court that [Holland] has been the victim of intentional discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). In *Reeves*, the Supreme Court clarified how a claimant can avoid summary judgment under the *McDonnell Douglas* framework. Once the question comes down to pretext, a plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (internal quotation marks omitted). A plaintiff could accomplish this goal "by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.
>
> In *Reeves*, the company claimed that Reeves was fired because he had failed at his responsibility of recording worker attendance. Reeves, however, offered evidence that he properly maintained the attendance records. This evidence, the Supreme Court explained, combined with the strong evidence supporting Reeves's prima facie case, was enough to support a jury's verdict of liability. *Reeves*, 530 U.S. at 146. Thus, the Supreme Court held that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148 (emphasis added). But the Supreme Court cautioned that this will not always be the case; for example, judgment as a matter of law may be appropriate if a "plaintiff created only a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* Thus, a key factor for courts to

> consider is "the probative value of the proof that the employer's
> explanation is false." *Id.* at 149.

487 F.3d 208, 214-15 (4th Cir. 2007).  Importantly, "[i]t is not our province to decide whether the

reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's

[adverse employment action]." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 722-23 (4th

Cir. 2002) (internal quotations and citation omitted)).  If the record demonstrates that Defendant

"honestly believed" Plaintiff deserved to receive the Direct Order, "then pretext is absent, even if

Defendant[] [was] wrong or mistaken about the underlying facts."  *Supinger v. Va.*, 259 F. Supp.

3d 419, 436 (W.D. Va. 2017) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217-18 (4th

Cir. 2007)).

The court finds *Foster v. University of Md.-Eastern Shore* instructive.  787 F.3d 243 (4th

Cir. 2015).  There, the Fourth Circuit found that the plaintiff stated a prima facie case for retaliation

and that the defendant had proffered evidence of a legitimate, non-retaliatory reason for

termination.  *Id.* at 253.  Thus, the court examined the pretext stage of the *McDonnell Douglas*

inquiry:

> The University claims to have fired Foster because she used too
> much leave time, was inflexible and unwilling to accommodate
> changes to her schedule, and moved furniture and edited office
> forms without permission. Foster argues that the University's
> proffered non-retaliatory reasons are pretextual because: (i) Foster's
> immediate supervisor and the department scheduler both testified
> that Foster was not inflexible in scheduling; (ii) Wright testified that
> there was no documentation of Foster's supposed inflexibility in her
> personnel file; (iii) Foster's immediate supervisor testified that
> Foster had been given permission to edit the office forms and that
> Wright had initially praised her work; (iv) Foster's immediate
> supervisor repeatedly praised her work and discussed promoting her
> to corporal before she made her sexual harassment complaint; and
> (v) the University did not initially provide Foster with a reason for
> her termination.

787 F.3d 243, 253-54 (4th Cir. 2015).

The Fourth Circuit agreed with the district court that the plaintiff "render[ed] the employer's reasons so questionable as to raise an inference of deceit." *Id.* at 254. And therefore, a jury could conclude from the plaintiff's evidence that the proffered justifications for terminating her were not its real reasons. *Id.* Moreover, the court determined that a jury could conclude the defendant terminated the plaintiff in retaliation for her complaints of sexual harassment and subsequent complaints of ongoing retaliation. *Id.* Accordingly, the court found that summary judgment in favor of the defendant was not warranted on the plaintiff's retaliation claim. *Id.*

Here, Plaintiff contends that he has provided evidence he had difficulty completing the manual updating assignments he had been assigned due to a lack of training and an excessive workload. (ECF No. 48-1 at 29.) While Plaintiff may have had difficulty completing the assignments, in contrast to *Foster*, Plaintiff fails to provide any evidence that Defendant's proffered reasons for issuing the Direct Order (at the time) or that Defendant's asserted justification (here) is false. *Foster*, 787 F.3d at 250. Plaintiff fails to offer evidence that he completed the manual updating assignments. Moreover, Defendant removed the manual updating work from Plaintiff's workload and reassigned the work. (Nero Aff., ECF No. 45-8 ¶¶ 47, 99, 109; Staggers Aff., ECF No. 48-9 ¶ 91.) At bottom, Plaintiff fails to offer evidence on which a reasonable jury could conclude that Defendant's legitimate, non-discriminatory reasons for issuance of the Direct Order are a pretext for retaliation. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

## V.    <u>**CONCLUSION**</u>

For the reasons set forth herein, by separate order, Defendant's Motion for Summary Judgment (ECF No. 45) is **GRANTED**.

/S/
_____
Julie R. Rubin
United States District Judge

January 16, 2024